No. 23-5611

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FRIENDS OF GEORGE'S, INC.,
*Plaintiff-Appellee,*

v.

STEVEN JOHN MULROY,
*Defendant-Appellant.*

On Appeal from the Judgment of the United States
District Court for the Western District of Tennessee
(Dist. Ct. No. 2:23-cv-02163-TLP-tmp)

**BRIEF OF *AMICI CURIAE* STATES OF SOUTH CAROLINA , ALABAMA, ALASKA, FLORIDA, GEORGIA, IDAHO, INDIANA, IOWA, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, TEXAS, UTAH, VIRGINIA, AND WEST VIRGINIA SUPPORTING DEFENDANT-APPELLANT AND REVERSAL**

STATE OF SOUTH CAROLINA
OFFICE OF THE ATTORNEY
GENERAL
1000 Assembly St.
Columbia, SC 29201
(803) 734-4127
thomashydrick@scag.gov

ALAN WILSON
*Attorney General*
Robert Cook
*Solicitor General*
J. Emory Smith, Jr.
*Deputy Solicitor General*
Thomas T. Hydrick
*Asst. Dep. Solicitor General*
Counsel of Record
Joseph D. Spate
*Asst. Dep. Solicitor General*

August 29, 2023

*Attorneys for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION AND INTERESTS OF AMICI .................................................1

SUMMARY OF ARGUMENT ..........................................................................2

ARGUMENT ................................................................................................3

   I.    The District Court Failed to Apply the Presumption of Legislative Good
       Faith ............................................................................................3

       A. Courts Regularly Apply the Presumption of Legislative Good Faith ....3

       B. The Presumption of Legislative Good Faith Preserves the Separation of
          Powers .....................................................................................7

   II.   The District Court Erroneously Relied on the Statements of Individual
       Legislators ....................................................................................9

   III.  The Tennessee General Assembly Acted in Good Faith............................10

       A. The Text of the AEA Does Not Support a Finding of Impermissible
          Purpose ..................................................................................13

       B. The Tennessee General Assembly Properly Sought to Regulate
          Obscenity. ..............................................................................14

CONCLUSION ..........................................................................................16

CERTIFICATE OF COMPLIANCE ...............................................................19

CERTIFICATE OF SERVICE ......................................................................20

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez*,
  138 S.Ct. 2305 (2018) ................................................................ 3, 5, 6
*Aldridge v. Williams*,
  44 U.S. 9 (1845) ....................................................................... 11
*Am-Pro Protective Agency, Inc. v. United States*,
  281 F.3d 1234 (Fed. Cir. 2002) ...................................................... 4
*Barnes v. Glen Theatre, Inc.*,
  501 U.S. 560 (1991) .................................................................... 15
*Chrysler Corporation v. Brown*,
  441 U.S. 281 (1979) .................................................................... 10
*Dandridge v. Williams*,
  397 U.S. 471 (1970) ..................................................................... 8
*Daniel v. Family Sec. Life Ins. Co*,
  336 U.S. 220 (1949) .................................................................... 11
*Dobbs v. Jackson Women's Health Organization*,
  142 S.Ct. 2228 (2022) ................................................................. 10
*Edwards v. Aguillard*,
  482 U.S. 578 (1987) .................................................................. 9, 11
*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) .................................................................... 12
*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
  545 U.S. 546 (2005) .................................................................... 11
*Fieger v. U.S. Atty. Gen*,
  542 F.3d 1111 (6th Cir. 2008) ....................................................... 12
*Fletcher v. Peck*,
  6 Cranch 87 (1810) ...................................................................... 7
*Friends of Georges*, *Inc. v. Mulroy*,
  No. 2:23-cv-02163, 2023 WL 3790583 (W.D. Tenn. 2023) ................... 2, 10
*Grainger v. Douglas Park Jockey Club*,
  148 F. 513 (6th Cir. 1906) ............................................................. 6
*Hill v. Colorado*,
  530 U.S. 703 (2000) ................................................................. 12, 13
*Isle Royale Boaters Ass'n v. Norton*,
  330 F.3d 777 (6th Cir. 2003) ........................................................ 11
*L. W. by & through Williams v. Skrmetti*,
  73 F.4th 408 (6th Cir. 2023) ......................................................... 16

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
  66 F.4th 905 (11th Cir. 2023) .........................................................................5, 10
*Miller v. Johnson*,
  515 U.S. 900 (1995).........................................................................................3, 8
*Mueller v. Allen*,
  463 U.S. 388 (1983) ...........................................................................................9
*New York v. Ferber*,
  458 U.S. 747 (1982)..........................................................................................16
*Paris Adult Theatre I v. Slaton*,
  413 U.S. 49 (1973)............................................................................................14
*People v. Morgan*,
  79 Colo. 504, 246 P. 1024 (1926).......................................................................7
*Reed v. Town of Gilbert, Ariz*
  576 U.S. 155 (2015)..........................................................................................12
*San Antonio Indep. Sch. Dist. v. Rodriguez*,
  411 U.S. 1 (1973)................................................................................................9
*SOB, Inc. v. Cnty. of Benton*,
  317 F.3d 856 (8th Cir. 2003) ...................................................................... 14, 15
*State v. Thomason*,
  142 Tenn. 527, 221 S.W. 491 (1920) ..................................................................7
*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
  429 U.S. 252 (1977)............................................................................................7
*W. & S. Life Ins. Co. v. State Bd. Of Equalization of California*,
  451 U.S. 648 (1981) ...........................................................................................8
*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
  945 F.3d 206 (5th Cir. 2019) .........................................................................5, 6
*Wright v. Rockefeller*,
  376 U.S. 52 (1964)..............................................................................................5
*United States v. Armstrong*,
  517 U.S. 456 (1996)............................................................................................4
*United States v. Carrillo-Lopez*,
  68 F.4th 1133 (9th Cir. 2023) .............................................................................5
*United States v. Des Moines Nav. & Ry. Co.*,
  142 U.S. 510 (1892)............................................................................................3
*United States v. O'Brien*,
  391 U.S. 367 (1968)........................................................................................8, 10

**Statutes**

Tenn. Code Ann. § 39-17-901(6)..............................................................................14

**Other Authorities**

Aaron J. Horner, *How Difficult Is It to Challenge Lines on A Map?: Understanding the Boundaries of Good Faith in Abbott v. Perez*, 72 Baylor L. Rev. 370 (2020) ...................................................................................................................4, 5

## QUESTION PRESENTED

I.   Whether the district court erred in concluding that the Adult Entertainment Act ("AEA") was adopted for an impermissible purpose?

## INTRODUCTION AND INTERESTS OF AMICI CURIAE

Like Tennessee, Amici States have long sought to safeguard the physical and psychological well-being of minor children. As part of these efforts, many States have enacted constitutionally permissible obscenity laws, which are designed to ensure that certain obscene materials are not distributed to or accessible to minors.

In keeping with this tradition and in response to concerns from Tennessee citizens, the Tennessee General Assembly passed the AEA, which is intended to prevent minor children from being exposed to certain sexually explicit performances. Although popularly derided as ban on drag performances, the AEA does no such thing—instead it merely restricts the locations at which certain forms of adult-oriented entertainment may be performed.

The district court held that the AEA was unconstitutional under the First Amendment and was subject to strict scrutiny. In doing so, the district court held that the text and legislative history of the AEA support the conclusion that the law was passed because of an impermissible purpose.

The district court's analysis on this point was seriously flawed and failed to recognize and apply longstanding precedent, including the presumption of legislative good faith. Amici States have a compelling interest in defending the acts

1

of their respective legislative bodies and ensuring that precedent on this point is properly applied by federal courts throughout the country.

## SUMMARY OF ARGUMENT

As an "alternative and independent basis for its conclusion" that the AEA is a content-based regulation, the district court held that the AEA was passed because of an impermissible purpose. *Friends of Georges*, *Inc. v. Mulroy*, No. 2:23-cv-02163, 2023 WL 3790583, at *22 (W.D. Tenn. 2023). Specifically, the Court concluded that the Tennessee General Assembly improperly sought to suppress the speech of certain performers who seek to "impersonate a gender that is different from the one with which they are born." *Id*.

The district court's holding on this point was incorrect for at least two reasons. First, the district court failed to apply the presumption of legislative good faith to which the Tennessee General Assembly and all legislative bodies are entitled. Second, the district court erroneously relied on the statements of individual legislators to conclude that the Tennessee General Assembly acted with an impermissible purpose.

Applying the presumption of legislative good faith, the Tennessee General Assembly acted in good faith and did not have an impermissible purpose in passing the AEA. Nothing in the text or history of the AEA suggests otherwise or is sufficient to overcome the presumption of legislative good faith.

2

**ARGUMENT**

## I.     The District Court Failed to Apply the Presumption of Legislative Good Faith.

In concluding that the AEA was passed because of an impermissible purpose, the district court failed to apply—or even acknowledge—the presumption of legislative good faith. This failure alone constitutes reversible error. *See Abbott v. Perez*, 138 S.Ct. 2305, 2324 (2018) ("And when a finding of fact is based on the application of an incorrect burden of proof, the finding cannot stand.").

A. <u>Courts Regularly Apply the Presumption of Legislative Good Faith.</u>

As its name suggests, the presumption of legislative good faith instructs courts to presume that a legislature acted in good faith in enacting a statute. *See Miller v. Johnson*, 515 U.S. 900, 915 (1995); *see also United States v. Des Moines Nav. & Ry. Co.*, 142 U.S. 510, 544 (1892) ("The knowledge and good faith of a legislature are not open to question. It is conclusively presumed that a legislature acts with full knowledge, and in good faith.").

A law's challenger bears the "demanding" burden of proving that a law was passed because of an impermissible purpose. *See Miller*, 515 U.S. at 928, 115 S.Ct. at 2497 (O'Connor, J., concurring); *see also Abbott*, 138 S.Ct. at 2325 ("And it was the plaintiffs' burden to overcome the presumption of legislative good faith and show that the 2013 Legislature acted with invidious intent.").

3

In applying this type of presumption, courts have required plaintiffs to overcome this presumption by clear and convincing evidence. *See Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002) ("[W]e believe that clear and convincing most appropriately describes the burden of proof applicable to the presumption of the governments good faith."); *see also United States v. Armstrong*, 517 U.S. 456, 458 (1996) ("[I]n the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties . . . .") (quoting *United States v. Chemical Foundation, Inc*., 272 U.S. 1, 14–15 (1926)); *Flemming v. Nestor*, 363 U.S. 603, 617 (1960) ("We observe initially that only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground."). As the Court in *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234 (Fed. Cir. 2002) acknowledged, "for almost 50 years this court and its predecessor have repeated that we are 'loath to find the contrary [of good faith], and it takes, and should take, well-nigh irrefragable proof to induce us to do so.'" 281 F.3d at 1239 (quoting *Schaefer v. United States*, 633 F.2d 945, 948–49 (1980)).

This clear and convincing standard likely "require[s] a subjective state-of-mind to overcome the good faith presumption, which is difficult to prove." Aaron J. Horner, How Difficult Is It to Challenge Lines on A Map?: Understanding the Boundaries of Good Faith in Abbott v. Perez, 72 BAYLOR L. REV. 370, 382 (2020). As a result, "any challenger will likely need to demonstrate that discriminatory intent

4

is the only possible inference from the legislature's action, if not some other facts demonstrating the actual discriminatory intent in order to overcome the good faith presumption." 72 BAYLOR L. REV. at 388; *see also Wright v. Rockefeller*, 376 U.S. 52, 56–57 (1964) ("It may be true, as Judge Feinburg thought, that there was evidence which could have supported inferences that racial considerations might have moved the state legislature, but, even if so, we agree that there also was evidence to support his finding that the contrary inference was 'equally, or more, persuasive.' Where there are such conflicting inferences one group of them cannot, because labeled as 'prima facie proof,' be treated as conclusive on the fact finder so as to deprive him of his responsibility to choose among disputed inferences.") (internal citations omitted).[1]

Federal courts regularly apply the presumption of legislative good faith in a variety of contexts. *See*, *e.g.*, *United States v. Carrillo-Lopez*, 68 F.4th 1133, 1140 (9th Cir. 2023) (applying the presumption in the context of a Fifth Amendment Equal Protection challenge to a federal immigration law); *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 923 (11th Cir. 2023) (applying the presumption in the context of a constitutional and Voting Rights Act challenge to Florida's election laws); *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,

---

[1] And even if a court were to apply a different burden of proof, the burden is undisputedly on the law's challenger. *See Abbott*, 138 S.Ct. at 2324 ("Whenever a challenger claims that a state law was enacted with discriminatory intent, the burden of proof lies with the challenger, not the State.").

945 F.3d 206, 217 (5th Cir. 2019) (applying the presumption in the context of a Dormant Commerce Clause and Fourteenth Amendment Equal Protection challenge to a Texas statute regulating the retail sale of liquor). And this Court has long recognized the presumption. *See Grainger v. Douglas Park Jockey Club*, 148 F. 513, 535 (6th Cir. 1906) ("[G]ood faith and a knowledge of existing conditions on the part of the Legislature is to be presumed . . . .").

The application of this presumption is perhaps most frequently seen in districting cases. *See Abbott*, 138 S.Ct. at 2324 ("This rule takes on special significance in districting cases."). For example, in *Abbott v. Perez*, 138 S.Ct. 2305 (2018), the Supreme Court reversed the district court for its failure to properly apply the presumption of good faith. 138 S.Ct. at 2325 ("The Texas court contravened these basic principles. Instead of holding the plaintiffs to their burden of overcoming the presumption of good faith and discriminatory intent, it reversed the burden of proof."). In concluding that plaintiffs' evidence was insufficient to establish that the Texas legislature acted in bad faith, the Supreme Court looked to the direct and circumstantial evidence of the legislature's intent, including the historical background of the legislative enactment and events surrounding the legislative process. *See Abbott*, 138 S.Ct. at 2325 (citing *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267 (1977)).

State courts have also long applied this presumption. *See State v. Thomason*, 142 Tenn. 527, 221 S.W. 491, 495 (1920) ("It is always to be presumed that the Legislature acted in good faith and within constitutional limits . . . ."); *see also People v. Morgan*, 79 Colo. 504, 507, 246 P. 1024, 1026 (1926) ("The good faith of the Legislature will be presumed.").

In short, both federal and state courts routinely apply the presumption of legislative good faith in a variety of cases. The district court's failure to do so here constitutes reversible error.

B. <u>The Presumption of Legislative Good Faith Preserves the Separation of Powers.</u>

Basic principles of separation of powers animate the presumption of legislative good faith. Writing over two hundred years ago, Chief Justice Marshall first articulated the basis of the presumption of legislative good faith, noting that the "question, whether a law be void for its repugnancy to the constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case." *Fletcher v. Peck*, 6 Cranch 87, 129 (1810); *see also Village of Arlington Heights v. Metropolitan Housing Development Corp*., 429 U.S. 252, 268 n.18 (1977) ("This Court has recognized, ever since *Fletcher v. Peck*, 6 Cranch 87, 130–31, 3 L.Ed. 162 (1810), that judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government.").

This presumption is generally rooted in two separate but related principles of separation of powers. First, the presumption respects the role of the legislature in setting public policy. *See Miller*, 515 U.S. at 915 ("Electoral districting is a most difficult subject for legislatures, and so the States must have discretion to exercise the political judgment necessary to balance competing interests."). Out of respect to the legislative function, the presumption directs courts to be "sensitive to the complex interplay of forces that enter a legislature's" decision-making process. *See Miller*, 515 U.S. at 915–16.

Second, the presumption acknowledges the limitations of judicial power. As a corollary to the first principle, the presumption recognizes that courts are not policymakers. *See W. & S. Life Ins. Co. v. State Bd. Of Equalization of California*, 451 U.S. 648, 670 (1981) ("But the courts are not empowered to second-guess the wisdom of state policies. Our review is confined to the *legitimacy* of purpose.") (emphasis in original); *see also Dandridge v. Williams*, 397 U.S. 471, 485–86 (1970) ("And it is a standard that is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy.").

The presumption also recognizes that courts are not particularly well-equipped to discern legislative intent. *See United States v. O'Brien*, 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not

necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork. We decline to void essentially on the ground that it is unwise legislation which Congress had the undoubted power to enact and which could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it."). Some courts and commentators have gone so far as to suggest that it is nearly impossible for courts to successfully discern legislative intent. *See Edwards v. Aguillard*, 482 U.S. 578, 636–37 (1987) (Scalia, J, dissenting) ("[D]iscerning the subjective motivation of those enacting the statute is, to be honest, almost always an impossible task.").

These concerns take on special significance—and are arguably elevated—when a federal court purports to adjudicate matters of state law. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 44 (1973) ("Questions of federalism are always inherent in the process of determining whether a Sate's laws are to be accorded the traditional presumptions of constitutionality . . . ."). For these reasons, federal courts are often "reluctan[t] to attribute unconstitutional motives to the states." *Mueller v. Allen*, 463 U.S. 388, 394 (1983).

## II. The District Court Erroneously Relied on the Statements of Individual Legislators.

In concluding that the Tennessee General Assembly acted with an impermissible purpose, the district court also erred by improperly elevating the importance of remarks by individual legislators. Despite acknowledging that the

remarks of a single legislator are not controlling, the district court nonetheless viewed those remarks as "persuasive." *Friends of Georges*, 2023 WL 3790583, at *24. The district court erred in giving those remarks any weight, and in any event, even if considered, those remarks alone are insufficient to overcome the presumption of legislative good faith.

The district court's approach disregards clear Supreme Court precedent, which cautions that the "remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history." *Chrysler Corporation v. Brown*, 441 U.S. 281, 311 (1979); *see also Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228, 2256 (2022) ("Even when an argument about legislative motive is backed by statements made by legislators who voted for a law, we have been reluctant to attribute those motives to the legislative body as a whole."). This is particularly true when the presumption of legislative good faith applies. *See League of Women Voters*, 32 F.4th at 1373 ("Applying the presumption of good faith—as a court must—that statement by a single legislator is not fairly read to demonstrate discriminatory intent by the state legislature.").

These remarks should not be viewed as controlling—or even persuasive—as to legislative intent because what "motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." *O'Brien*, 391 U.S. at 384; *see*

*Daniel v. Family Sec. Life Ins. Co.*, 336 U.S. 220, 224 (1949) ("But a judiciary must judge by results, not by the varied factors which may have determined legislators' votes. We cannot undertake a search for motive in testing constitutionality."); *see also Aguillard*, 482 at 636–37 (1987) (Scalia, J, dissenting) ("The number of possible motivations, to begin with, is not binary, or indeed even finite. . . . To look for *the sole purpose* of even a single legislator is probably to look for something that does not exist.") (emphasis in original).

Or as this Court put it, "[w]e are wary of relying on individual legislators' statements, because individual statements are often contradicted or at least undermined by other statements in the legislative record." *Isle Royale Boaters Ass'n v. Norton*, 330 F.3d 777, 784 (6th Cir. 2003). These statements are "almost always cacophonous." *Id*. at 785.

The risk of selection bias provides another reason to avoid relying on the statements of individual legislators to discern legislative intent. Or as Judge Leventhal famously put it, judicial investigation into legislative history often devolves into "looking over a crowd and picking out your friends." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005).[2]

---

[2] A third potential reason to avoid relying on the statements of individual legislators is the general principle that the intent of a law should be discerned only through its text. *See Aldridge v. Williams*, 44 U.S. 9, 24 (1845) ("The law as it passed is the will of the majority of both houses, and the only mode in which that will is spoken is in the act itself; and we must gather their intention from the language there used. . . .").

11

These risks are heightened when considering the remarks of a bill's opponents, and courts are especially reluctant to rely on those statements in analyzing legislative history. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 203 n.24 (1976) ("This is especially so with regard to the statements of legislative opponents who '[i]n their zeal to defeat a bill . . . understandably tend to overstate its reach.'") (quoting *NLRB v. Fruit Packers*, 377 U.S. 58, 66 (1964)); *see also Fieger v. U.S. Atty. Gen.*, 542 F.3d 1111, 1119 (6th Cir. 2008) ("[I]solated statements made by opponents of a bill are to be accorded little weight . . . ."). [3]

In an attempt to avoid this clear precedent, the district court cited two Supreme Court cases—*Hill v. Colorado*, 530 U.S. 703 (2000) and *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 166 (2015)—which purportedly support its reliance on the remarks of individual legislators as part of the examination of the legislative history of the AEA. However, neither case supports the District Court's approach.

In *Hill*, the Court simply acknowledged that prior to the appeal to the Supreme Court, the Colorado Supreme Court's opinion "began by commenting on certain matters that were not in dispute" by reviewing the "history of the statute in detail" and concluding that it was crafted with the intent to protect certain rights, as well as

---

[3] The district court's use of legislative history in this case illustrates this aspect of the problem. In seizing on the remarks of the AEA's opponents, the district court disregarded the greater weight of legislative history, which is replete with examples of legislators expressing their intent to protect minors from sexually explicit performances generally. *See* Appellants' Br. at 46–47.

noting that the "trial court and the Court of Appeals had concluded that the statute was content neutral, that petitioners no longer contended otherwise, and that they agreed that the question for decision was whether the statute was a valid time, place, and manner restriction . . . ." *Hill v. Colorado*, 530 U.S. 703, 712–13 (2000). *Hill* does not elucidate the Court's use of individual remarks from single legislators to determine legislative intent for purposes of determining whether a statutory restriction is content-neutral.

As Appellant's opening brief explains, *Reed* likewise offers no support for the district court's position. In fact, *Reed* cites *United States v. O'Brien*, 391 U.S. 367 (1968), which expressly admonishes courts not to consider the remarks or concerns of individual legislators. *See supra*.

In short, the district court erred by relying on the statements of individual legislators to conclude that the Tennessee General Assembly acted with an impermissible purpose.

## III. The Tennessee General Assembly Acted in Good Faith.

Applying the presumption of legislative good faith, it is clear that the AEA was not passed with an impermissible purpose. Indeed, as ably explained in Appellant's opening brief, nothing in the text or history of the AEA suggests that the Tennessee General Assembly acted with an impermissible purpose in passing the law.

A. <u>The Text of the AEA Does Not Support a Finding of Impermissible Purpose.</u>

The AEA prohibits only performances that include "nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse" that "appeal[s] predominantly to prurient, shameful or morbid interests of minors," in a "patently offensive" way that "lacks serious literary, artistic, political or scientific value for minors." Tenn. Code Ann. § 39-17-901(6). The statute imposes the same restrictions on drag performers that it imposes on other entertainers who may provide sexually explicit performances, *id.*, which are copied verbatim from longstanding laws governing adult establishments and adult cabaret. The text of the AEA clearly demonstrates the good faith purpose of the Tennessee legislature to protect children from exposure to sexually explicit performances rather than to restrict the expression of drag performers.

B. <u>The Tennessee General Assembly Properly Sought to Regulate Obscenity.</u>

In passing the AEA, the Tennessee General Assembly continued a long tradition among the States of regulating obscenity, indecency, and adult entertainment. Courts have repeatedly recognized that the regulation of such activity is within the police power of the States. *See*, *e.g.*, *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 67 (1973) (recognizing that the police power includes the authority ot regulate obscenity); *see also SOB, Inc. v. Cnty. of Benton*, 317 F.3d 856, 860 (8th Cir. 2003) ("Public indecency . . . was a crime at common law, and public indecency

14

statutes are clearly within the police power of state and local governments."). And although "[n]on-obscene erotic and sexually explicit speech are entitled to some First Amendment protection," businesses "that market sexually explicit speech and expressive conduct may be regulated to the extent their activities are perceived as having adverse social and economic effects on society. For example, a law prohibiting the sale of sexually oriented materials to minors was upheld against a First Amendment challenge in *Ginsberg v. New York*, 390 U.S. 629, 634, 640–42, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968)." 317 F.3d at 859.

Ultimately, these types of statutes are "designed to protect morals and public order. The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals, and [the Supreme Court has] upheld such a basis for legislation." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569 (1991). After all, "'[t]he law . . . is constantly based on notions of morality, and if all laws representing essentially moral choices are to be invalidated under the Due Process Clause, the courts will be very busy indeed." *Id*. (quoting *Bowers v. Hardwick*, 478 U.S. 186, 196 (1986)).

Applying the presumption of legislative good faith, the Tennessee General Assembly did not act with an impermissible purpose in passing the AEA. On the contrary, both the text and the history of the AEA suggest that the General Assembly merely sought to advance its longstanding interest in "safeguarding the physical and

15

psychological well-being" of minor children. *See New York v. Ferber*, 458 U.S. 747, 756–57 (1982); *see also L. W. by & through Williams v. Skrmetti*, 73 F.4th 408, 419 (6th Cir. 2023) ("The State plainly has authority, in truth a responsibility, to look after the health and safety of its children.").

## CONCLUSION

In concluding that the Tennessee General Assembly acted with an impermissible purpose, the district court disregarded decades of precedent that respects the role of legislatures—and state legislatures in particular—in shaping public policy. The Tennessee legislature did not act with an impermissible purpose, and the Court's holding to the contrary undermines basic principles of separation of powers. The judgment of the district court should be reversed.

Respectfully submitted,

*s/ Thomas T. Hydrick*

Alan Wilson
  *Attorney General*
Robert Cook
  *Solicitor General*
J. Emory Smith, Jr.
  *Deputy Solicitor General*
Thomas T. Hydrick
  *Asst. Deputy Solicitor General*
  Counsel of Record
Joseph D. Spate
  *Asst. Deputy Solicitor General*

STATE OF SOUTH CAROLINA
OFFICE OF THE ATTORNEY GENERAL
1000 Assembly St.
Columbia, SC 29201
(803) 734-4127
thomashydrick@scag.gov

## ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General of Alabama

TREG TAYLOR
Attorney General of Alaska

ASHLEY MOODY
Attorney General of Florida

CHRISTOPHER M. CARR
Attorney General of Georgia

RAÚL LABRADOR
Attorney General of Idaho

THEODORE E. ROKITA
Attorney General of Indiana

BRENNA BIRD
Attorney General of Iowa

JEFF LANDRY
Attorney General of Louisiana

LYNN FITCH
Attorney General of Mississippi

ANDREW BAILEY
Attorney General of Missouri

AUSTIN KNUDSEN
Attorney General of Montana

MICHAEL T. HILGERS
Attorney General of Nebraska

DREW WRIGLEY
Attorney General of North Dakota

ANGELA COLMENERO
Provisional Attorney General of Texas

SEAN REYES
Attorney General of Utah

JASON MIYARES
Attorney General of Virginia

PATRICK MORRISEY
Attorney General of West Virginia

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 3,814 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman font) using Microsoft Word (the same program used to calculate the word count).

The Amici States are authorized to file this brief without the consent of the parties or the leave of the Court. Fed. R. App. P. 29(a)(2).

_s/ Thomas T. Hydrick_
Thomas T. Hydrick

August 29, 2023

## CERTIFICATE OF SERVICE

I certify that certify that on August 29, 2023, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that the foregoing document is being served on this day on all counsel of record registered to receive a Notice of Electronic Filing generated by CM/ECF.

*s/ Thomas T. Hydrick*
Thomas T. Hydrick

August 29, 2023