No. 23-5611

# In the United States Court of Appeals for the Sixth Circuit

FRIENDS OF GEORGES INC.,

*Plaintiff-Appellee*,

v.

STEVEN MULROY,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Western District of Tennessee, Western Division
Case No. 2:23-cv-02163-TLP

## BRIEF OF AMICUS CURIAE AMERICA FIRST LEGAL FOUNDATION IN SUPPORT OF APPELLANTS

GENE P. HAMILTON
NICHOLAS R. BARRY
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
nicholas.barry@aflegal.org

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3940 (fax)
jonathan@mitchell.law

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Table of contents ..... i

Table of authorities ..... ii

Interest of amicus curiae ..... iv

Argument ..... 1

I. The plaintiff failed to allege or prove an injury that is "fairly traceable" to the allegedly unlawful conduct of defendant Mulroy ..... 1

II. The Court should address the merits even if it concludes that the plaintiff failed to prove Article III Standing ..... 4

III. The district court was obligated to enforce state severability law ..... 6

IV. The district court's overbreadth remedy was improper when as-applied relief would fully redress the plaintiff's alleged injury ..... 10

V. Friends of George's must prove a "lopsided ratio" when comparing the unconstitutional and constitutional applications of the Adult Entertainment Act ..... 12

VI. The declaratory relief entered by the district court was impermissible and violates the Declaratory Judgment Act ..... 13

VII. The district court's judgment will not immunize lawbreakers from prosecution for violations that occurred while the district court's injunction remains in effect ..... 15

Conclusion ..... 18

Certificate of Compliance ..... 19

Certificate of Service ..... 20

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Biden*, 40 F.4th 375 (6th Cir. 2022) ........................................ 16

*Board of Trustees v. Fox*, 492 U.S. 469 (1989) ........................................ 10

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985) ........................................ 8, 9

*Califano* v. *Yamasaki*, 442 U.S. 682, 702 (1979) ........................................ 11

*California v. Texas*, 141 S. Ct. 2104 (2021) ........................................ 1, 2

*Camreta v. Greene*, 563 U.S. 692 (2011) ........................................ 15

*Charles Wolff Packing Co. v. Court of Industrial Relations of Kansas*, 267 U.S. 552 (1925) ........................................ 6

*Collins v. Yellen*, 141 S. Ct. 1761 (2021) ........................................ 2

*Daunt v. Benson*, 999 F.3d 299 (6th Cir. 2021) ........................................ 6

*Davis v. Federal Election Commission*, 554 U.S. 724 (2008) ........................................ 8

*Dorchy v. Kansas*, 264 U.S. 286 (1924) ........................................ 6

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ........................................ 15, 16, 17

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ........................................ 10

*Lindenbaum v. Realgy*, LLC, 13 F.4th 524 (6th Cir. 2021) ........................................ 6

*Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456 (6th Cir. 1999) ........................................ 6

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc) ........................................ 3

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ........................................ 4

*Schneider Granite Co. v. Gast Realty & Investment Co.*, 245 U.S. 288 (1917) ........................................ 6

*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998) ........................................ 4

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ........................................ 2

*U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491 (1993) ........................................ 6

*United States v. Hansen*, 143 S. Ct. 1932 (2023) ........................................ 3, 11, 12, 16

*Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980) ....................11

*Virginia v. Hicks*, 539 U.S. 113 (2003) ....................6

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) ....................2

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ....................2

*Wyoming v. Oklahoma*, 502 U.S. 437 (1992) ....................6, 9

**Statutes**

28 U.S.C. § 1291....................4

28 U.S.C. § 2201(a) ....................13, 14

Tenn. Code Ann. § 1-3-110 ....................7, 8, 9

Tenn. Code Ann. § 7-51-1407(c)(1) ....................7

**Other Authorities**

Emily Cochrane, *Judge Temporarily Blocks Tennessee Law That Restricts Drag Performances*, New York Times (March 31, 2023).................... 16

David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41.................... 14

Thomas W. Merrill, *Judicial Opinions as Binding Law and as Explanations for Judgments*, 15 Cardozo L. Rev. 43 (1993) .................... 17

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018) .................... 17

## INTEREST OF AMICUS CURIAE

Amicus curiae America First Legal Foundation is a nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution and federal statutes. America First Legal has a substantial interest in this case because it firmly believes, as part of its mission to encourage understanding of the law and individual rights guaranteed under the Constitution of the United States, that a proper understanding of those rights must be informed by reference to their text, and any other rights not expressly mentioned must be deeply rooted in this nation's history and tradition. And further, America First Legal believes that a proper understanding of the law in the United States must include a coherent, consistent understanding of the role of federal courts in deciding cases or controversies presented to them.

All parties have consented to the filing of this brief. No counsel for a party authored any part of this brief. And no one other than the amicus curiae, its members, or its counsel financed the preparation or submission of this brief.

The problems with the district court's judgment and opinion go beyond what the Attorney General of Tennessee has already identified in his thorough and comprehensive brief. We will discuss several of them in this amicus submission.

## ARGUMENT

### I. The Plaintiff Failed To Allege Or Prove An Injury That Is "Fairly Traceable" To The Allegedly Unlawful Conduct Of Defendant Mulroy

The district court's Article III standing analysis was wrong at every turn, and the Attorney General explains many of the errors in its standing discussion. *See* Appellant's Br. at 11–26. But there is a more serious problem with the district court's (and the plaintiff's) theory of standing. Neither the district court (nor the plaintiff) has explained how the supposed injuries are "fairly traceable" to the allegedly unlawful *conduct* of Steven Mulroy. Instead, the district court thought that it could establish Article III standing by declaring that the plaintiff's injuries are "fairly traceable" to the *existence* of the Adult Entertainment Act—rather than the *conduct* of the defendant who was sued. *See* Op. R.91, PageID#1429 ("These harms from AEA's substantial overbreadth are *fairly traceable to the AEA*" (emphasis added)).

The district court's analysis flouts *California v. Texas*, 141 S. Ct. 2104 (2021), and misunderstands the nature of judicial review. Litigants in federal court do not "challenge" statutes. They challenge the *conduct* of the defendants that they have sued. So a plaintiff must allege and prove an injury that is

"fairly traceable" to the "allegedly unlawful *conduct*" of the named *defendant*; it is not enough to assert an injury caused by the *existence* of an allegedly unlawful statute. *See California*, 141 S. Ct. at 2113 ("A plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("If the plaintiff does not claim to have suffered an injury *that the defendant caused* and the court can remedy, there is no case or controversy for the federal court to resolve." (citation and internal quotation marks omitted)). The Supreme Court has made this clear time and time again. In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), for example, the Court wrote:

> For purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to "allegedly unlawful conduct" of the defendant, *not to the provision of law that is challenged*.

*Id.* at 1779 (emphasis added). And the Supreme Court has repeatedly stated that the federal judiciary cannot issue remedies that operate on a statute; it can redress only the unlawful *actions* of litigants before the court. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021) ("[N]o court may . . . purport to enjoin challenged laws themselves" (citations and internal quotation marks omitted)); *see also Okpalobi v. Foster*, 244

F.3d 405, 426 n.34 (5th Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute.").

All of this remains true when a plaintiff asserts a First Amendment overbreadth claim, as the rules of Article III standing are constitutionally mandated and cannot be subject to exceptions designed to accommodate the policy considerations that undergird the overbreadth doctrine. *See United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023) (describing how overbreadth departs from the ordinary rules governing facial challenges and third-party standing, which the Court justifies on the ground that it "provides breathing room for free expression."). So Friends of George's needed to prove an Article III injury that is "fairly traceable" to the allegedly unlawful conduct of defendant Mulroy, *i.e.*, it needed to prove that Mulroy intended to enforce the Adult Entertainment Act against Friends of George's and its performances. And the district court needed to find by a preponderance of the evidence that *Mulroy* is injuring Friends of George's by interpreting the Adult Entertainment Act in a manner that would outlaw its performances.

Neither the plaintiff nor the district court produced anything showing that Mulroy intends to enforce the Adult Entertainment Act against Friends of George's or its performances. The parties' stipulation that defendant Mulroy intends to enforce "all State of Tennessee laws that fall within his jurisdiction"[1] proves nothing, because it does not show that Mulroy interprets

1. Op. R.91, PageID#1398 (quoting Pretrial Order, R.69, PageID#955).

the Adult Entertainment Act to prohibit any past or future performance of Friends of George's. Indeed, Mulroy specifically disclaims any interpretation of the Adult Entertainment Act that would allow him to prosecute Friends of George's for the performances that were introduced into evidence. *See* Appellant's Br. at 12–23. The plaintiff needed to prove that *Mulroy* is inflicting Article III injury by threatening to prosecute Friends of George's, and it does not carry its burden by tracing its Article III injuries to the mere *existence* of the Adult Entertainment Act.

## II. The Court Should Address The Merits Even If It Concludes That The Plaintiff Failed To Prove Article III Standing

If the Court concludes that the plaintiff failed to prove the elements of standing, then it should go on to consider the merits and reverse the district court on the additional ground that the plaintiff was not entitled to a facial remedy under the overbreadth doctrine. Although federal courts are forbidden to "hypothesize" subject-matter jurisdiction "for the purpose of deciding the merits,"[2] this Court would not violate the ban on hypothetical jurisdiction by vacating the judgment and injunction on the additional ground that the plaintiff failed to establish overbreadth.

The jurisdiction of *this* Court to review the district court's judgment is entirely secure, as it rests on 28 U.S.C. § 1291. This Court's jurisdiction does not in any way depend on whether the district court had subject-matter juris-

2. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998).

diction under Article III to consider the merits of the First Amendment claims. An appellate court will have jurisdiction to review a "final decision" of the district court regardless of whether the district court had jurisdiction to render that decision, and it may review *all* aspects of that district-court decision—both those pertaining to jurisdiction and those regarding the merits. None of that violates *Steel Co.* or the prohibition on "hypothetical jurisdiction" because an appellate court's jurisdiction does not depend on the existence of jurisdiction in the district court, and an appellate court has jurisdiction to review a final decision under 28 U.S.C. § 1291 even when a district court lacked subject-matter jurisdiction to issue the judgment or decision being reviewed.

There are also compelling reasons for this Court to address the merits, even though it is not required to do so if it concludes that the plaintiff lacks Article III standing. It would further judicial economy for the Court to resolve the constitutional and remedial issues now, because a future plaintiff might establish Article III standing with a better developed factual record. That plaintiff could then ask for an overbreadth remedy, and the issues will be back before this Court even though they have already been briefed and argued in this appeal. This Court should also rule on the merits to provide much needed guidance and assurance to state legislatures who might consider laws similar to the Adult Entertainment Act. It is crucial for legislators within this circuit to know whether these laws are constitutional or, if they are constitutionally problematic, what needs to be done to fix them.

## III. The District Court Was Obligated To Enforce State Severability Law

State severability law is conclusive and binding on the federal judiciary. *See, e.g.*, *Virginia v. Hicks*, 539 U.S. 113, 121 (2003) ("Severab[ility] is of course a matter of state law."); *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 510 (1993) ("[A]ny issue of severability is a question of state law"). The Supreme Court has said so many times,[3] and so has the Sixth Circuit. *See Lindenbaum v. Realgy*, LLC, 13 F.4th 524, 529 (6th Cir. 2021) ("[F]ederal courts must apply the state's law of severability."); *Daunt v. Benson*, 999 F.3d 299, 321 n.6 (6th Cir. 2021) ("Severability is of course a matter of state law." (citations and internal quotation marks omitted)); *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 466 (6th Cir. 1999) ("State law governs the question of severability."). The law of Tennessee makes unmistakably clear that the Adult Entertainment Act is severable not only with respect to its sections, clauses, sentences, and parts, but also with regard to the Act's *applications* to any particular person or circumstance:

---

3. In addition to *Hicks* and *Fabe*, *see Wyoming v. Oklahoma*, 502 U.S. 437, 459 (1992) ("[T]he determination of severability will in this situation be one of state law"); *Charles Wolff Packing Co. v. Court of Industrial Relations of Kansas*, 267 U.S. 552, 562 (1925) ("As the question of separability was a state question, the decision of that court thereon is conclusive here."); *Dorchy v. Kansas*, 264 U.S. 286, 290 (1924) ("[T]he state court['s] decision as to the severability of a provision is conclusive upon this Court."); *Schneider Granite Co. v. Gast Realty & Investment Co.*, 245 U.S. 288, 290 (1917) ("[T]he severability of a statute of the state . . . is a question of state law.").

> It is hereby declared that the sections, clauses, sentences and parts of the Tennessee Code are severable, are not matters of mutual essential inducement, and any of them shall be exscinded if the code would otherwise be unconstitutional or ineffective. If any one (1) or more sections, clauses, sentences or parts shall for any reason be questioned in any court, and shall be adjudged unconstitutional or invalid, such judgment shall not affect, impair or invalidate the remaining provisions thereof, but shall be confined in its operation to the specific provision or provisions so held unconstitutional or invalid, *and the inapplicability or invalidity of any section, clause, sentence or part in any one (1) or more instances shall not be taken to affect or prejudice in any way its applicability or validity in any other instance*.

Tenn. Code Ann. § 1-3-110 (emphasis added). The district court never even mentioned this state-law severability provision or acknowledged its existence, even though it was legally bound to apply it.

The district court's insouciance toward state severability law contributed to many of the blunders that appear in its opinion and judgment. First, as the Attorney General notes, the district court could not allow Friends of George's to challenge the constitutionality of the Adult Entertainment Act's "public property" provision[4] without establishing Article III standing with respect to that particular provision. *See* Appellant's Br. at 23–26. The Attorney General correctly observes that the district court flouted rulings from the Supreme Court and the Sixth Circuit that require litigants to establish stand-

4. *See* Tenn. Code Ann. § 7-51-1407(c)(1) ("It is an offense for a person to perform adult cabaret entertainment: (A) On public property; or (B) In a location where the adult cabaret entertainment could be viewed by a person who is not an adult.").

ing "on a provision-specific basis,"[5] but there is a more serious problem. The district court treated the "public property" provision (section 7-51-1407(c)(1)(A)) and the neighboring provision barring adult cabaret entertainment in locations where it could be viewed by a minor (section 7-51-1407(c)(1)(B)) as non-severable, even though the law of Tennessee compelled the district court to sever these discrete provisions rather than allowing litigants to treat them as an undifferentiated whole.

The district court was also obligated to sever and preserve the discrete applications of the Adult Entertainment Act that can be enforced without violating the First Amendment, rather than "facially" enjoining the Act's enforcement on "overbreadth" grounds. *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 506 & n.14 (1985) (enforcing an application-severability requirement in a state statute that contained an overbroad definition of prurience, holding that "facial invalidation of the statute was . . . improvident"). Tennessee's severability requirement compels courts to preserve not only the textual provisions or sections of a law that can remain enforceable without the unconstitutional parts, but also the *applications* of an allegedly unconstitutional statute that can be enforced without violating the Constitution. *See* Tenn. Code Ann. § 1-3-110 ("[T]he inapplicability or invalidity of any sec-

5. *See* Appellant's Br. at 23 (quoting *Prime Media v. Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007)); *see also Davis v. Federal Election Commission*, 554 U.S. 724, 733–34 (2008) (standing to challenge one statutory subsection does not confer standing to challenge a neighboring statutory subsection).

tion, clause, sentence or part in any one (1) or more instances shall not be taken to affect or prejudice in any way its applicability or validity in any other instance."); *Wyoming v. Oklahoma*, 502 U.S. 437, 460–61 (1992) ("Severability clauses may easily be written to provide that if application of a statute to some classes is found unconstitutional, severance of those clauses permits application to the acceptable classes."). So the district court was obligated to sever and preserve not only the "public property" provision in section 7-51-1407(c)(1)(A), which the plaintiff had no standing to challenge, but all *applications* of the Adult Entertainment Act that can be enforced without violating the First Amendment. That remains the case even though the plaintiff brought an "overbreadth" claim, as state severability law trumps the overbreadth doctrine. *See Brockett*, 472 U.S. at 506 & n.14.

Finally, the district court claimed that the inclusion of "male and female impersonators" within the definition of "adult cabaret entertainment" was evidence that the *entire* Adult Entertainment Act was "viewpoint discriminatory." Op. R.91, PageID#1436–37; *see also id.* ("The AEA is viewpoint discriminatory."). But Tennessee's severability requirement compelled the district court to limit its "viewpoint discrimination" pronouncement to that particular segment of the Adult Entertainment Act. *See* Tenn. Code Ann. § 1-3-110 ("[T]he sections, clauses, sentences and parts of the Tennessee Code are severable"). The district court was not permitted to condemn the entire enactment as "viewpoint discriminatory" merely because a severable component of a statutory definition singled out "male and female impersona-

tors." Nor could the district court use this accusation as a reason to enjoin the Act's enforcement across the board, including the portions of the Act that bear no hallmarks of viewpoint discrimination. The district court was legally obligated to sever that phrase, and its viewpoint-discrimination holding could *at most* justify an injunction that restrains Mulroy from enforcing the Adult Entertainment Act against male and female impersonators.

## IV. The District Court's Overbreadth Remedy Was Improper When As-Applied Relief Would Fully Redress The Plaintiff's Alleged Injury

Courts should not issue overbreadth remedies when as-applied relief can fully redress the plaintiff's alleged injuries. The Supreme Court so held in *Board of Trustees v. Fox*, 492 U.S. 469 (1989):

> It is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily—that is, before it is determined that the statute would be valid as applied. . . . [F]or reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first.

*Id.* at 485–86. If a litigant asserting an overbreadth claim insists that its speech or conduct is *protected* by the First Amendment, then the Court should award as-applied relief that shields the plaintiff's constitutionally protected activities rather than nixing the statute's enforcement across the board. *See Gonzales v. Carhart*, 550 U.S. 124, 168 (2007) ("[A]s-applied challenges are the basic building blocks of constitutional adjudication." (citation and internal quotation marks omitted)). Overbreadth remedies should be

considered *only* when a litigant's conduct is *unprotected* by the First Amendment, because as-applied relief cannot be used to restrain government officials from enforcing a statute against constitutionally unprotected conduct. *See United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023) (considering overbreadth claim raised by litigant who conceded that his speech was constitutionally unprotected); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980) (overbreadth doctrine allows "a litigant whose own activities are unprotected" to "nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court.").

The district court never even cited *Fox* or acknowledged its existence. But *Fox* makes short work of the plaintiff's overbreadth claim. Friends of George's is not alleging that its performances are unprotected by the First Amendment; to the contrary, it has insisted throughout this litigation that its performances are constitutionally protected speech and expression. The district court agreed and criticized the Adult Entertainment Act for "chilling" these supposedly constitutionally protected performances. So the district court (at most) should have issued an as-applied remedy that restrains Mulroy from enforcing the Adult Entertainment Act against Friends of George's. Courts have no business issuing an "overbreadth" remedy when an as-applied remedy is adequate for the job. *See Califano* v. *Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the

defendant than necessary to provide complete relief *to the plaintiffs*" (emphasis added)).

## V. FRIENDS OF GEORGE'S MUST PROVE A "LOPSIDED RATIO" WHEN COMPARING THE UNCONSTITUTIONAL AND CONSTITUTIONAL APPLICATIONS OF THE ADULT ENTERTAINMENT ACT

The Supreme Court's most recent pronouncement on the overbreadth doctrine requires litigants to prove a "lopsided ratio" when comparing a law's "unconstitutional applications" to the statute's "lawful sweep":

> Because it destroys some good along with the bad, invalidation for overbreadth is strong medicine that is not to be casually employed. To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. *In the absence of a lopsided ratio*, courts must handle unconstitutional applications as they usually do—case-by-case.

*United States v. Hansen*, 143 S. Ct. 1932, 1939–40 (2023) (emphasis added) (citations and internal quotation marks omitted); *see also id.* at 1948 ("[T]he ratio of unlawful-to-lawful applications is *not lopsided enough* to justify the 'strong medicine' of facial invalidation for overbreadth." (emphasis added)). Friends of George's failed to demonstrate a "lopsided ratio" when comparing the supposedly unconstitutional applications of the Adult Entertainment Act with its legitimate sweep, and the district court made no such finding.

The district court can be forgiven for ignoring the "lopsided ratio" requirement because *Hansen* had not been decided when the district issued its findings and conclusions on June 5, 2023. But Friends of George's must

demonstrate on appeal that a "lopsided ratio" exists based on the evidence in the trial-court record. And its task will be made more difficult by the district court's insistence on enjoining the enforcement of the Adult Entertainment Act across the board, as the inclusion of the "public property" provision significantly increases the constitutional applications that must be included when calculating the overbreadth ratio.

## VI. The Declaratory Relief Entered By The District Court Was Impermissible And Violates The Declaratory Judgment Act

The district court's judgment purports to award relief under the Declaratory Judgment Act, which authorizes federal district courts to

> declare the rights and other legal relations of any interested party seeking such declaration.

28 U.S.C. § 2201(a). Yet the declaratory relief described in the judgment does not mention any "rights" or "other legal relations" of Friends of George's. Instead, the declaratory relief opines on the constitutionality of the Adult Entertainment Act in the abstract:

> The Court enters this judgment in favor of Plaintiff, declaring the Adult Entertainment Act (2023 Tenn. Pub. Acts, ch. 2 (codified at Tenn. Code. Ann. §§ 7-51-1401, and -1407)) **UNCONSTITUTIONAL** and **PERMANENTLY ENJOINS** Defendant District Attorney General Steven J. Mulroy from enforcing the Act within his jurisdiction in **SHELBY COUNTY, TENNESSEE.**

Judgment, R.92, PageID#1464 (emphasis in original). The Declaratory Judgment Act does not authorize "relief" of this sort.

Courts rarely quote or analyze the language of the Declaratory Judgment Act, but the statute makes clear that a court may declare *only*: (1) the "rights and other legal relations"; (2) of an "interested party" seeking this declaration. The statute does not authorize courts to make declarations of law in the abstract, and any declaratory relief awarded under 28 U.S.C. § 2201(a) must comport with each of these statutory requirements.

Several implications follow. The first is that the Court's declaratory relief should be phrased in terms of the "rights and other legal relations" belonging to Friends of George's, rather than an abstract pronouncement on the constitutionality of a statute or the legality of a defendant's conduct. A declaratory judgment announcing that "the Adult Entertainment Act is unconstitutional" is too abstract to qualify as a statement of the "rights or "legal relations" of Friends of George's. The district courts in this circuit must always bear in mind that 28 U.S.C. § 2201 authorizes declarations only of a *litigant's* "rights and other legal relations," and declaratory judgments should describe those "rights" and "legal relations" rather than offer abstract pronouncements on the constitutionality of a statute or the legality of an agency rule.

The second implication is that courts may declare only the rights and legal relations of a "party" to the lawsuit. They cannot declare the rights of a non-party or a non-litigant under 28 U.S.C. § 2201. *See* David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41, 45 ("[The court is empowered to declare only the 'rights' of the 'party seeking such declaration,' and he must be 'interested'; these terms seem both to forbid litigation of third-party

rights absolutely"). Of course, a declaration that Friends of George's has a "right" to engage in its performances may imply that others also enjoy that right. But a district court cannot formally pronounce the rights of non-litigants in a declaratory judgment, even if its ruling indicates that others would qualify for similar declaratory relief if they were ever to request it from the courts. Other remedies must be deployed to vindicate third-party rights of that sort.

## VII. The District Court's Judgment Will Not Immunize Lawbreakers From Prosecution For Violations That Occurred While The District Court's Injunction Remains In Effect

If the Court vacates or reverses the district court's judgment, it should make clear that District Attorney Mulroy (and others) may prosecute anyone who violated the Adult Entertainment Act while the district court's injunction was in effect. A federal district court's judgments or injunctions have no precedential effect in other court proceedings,[6] and a *vacated* district-court ruling provides no shield to those who chose to violate a statute in reliance on an erroneous and now-repudiated district-court decision. *See Edgar v. MITE Corp.*, 457 U.S. 624, 651 (1982) (Stevens, J., concurring in part and concurring in the judgment) ("[A] final judgment declaring a state statute unconstitutional would not grant immunity for actions taken in reliance on the court's

6. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

decision" because "every litigant is painfully aware of the possibility that a favorable judgment of a trial court may be reversed on appeal."). And of course prosecutors other than District Attorney Mulroy have carte blanche to enforce the Adult Entertainment Act against past and future violators because they were never enjoined in the first place. *See id.* at 649 (Stevens, J., concurring in part and concurring in the judgment) (an injunction "d[oes] not enjoin other parties who are authorized by the Act to enforce its provisions."); Emily Cochrane, *Judge Temporarily Blocks Tennessee Law That Restricts Drag Performances*, New York Times (March 31, 2023), available at nyti.ms/3QYAQTu (falsely reporting that the district court "put a hold" on the Adult Entertainment Act when defendant Mulroy was the only district attorney bound by the district court's TRO[7]).

A successful overbreadth challenge does not take the disputed statute "off the books," as Justice Ketanji Brown Jackson falsely asserted throughout her *Hansen* dissent. *See Hansen*, 143 S. Ct. at 1953 (Jackson, J., dissenting) ("[T]he goal of the overbreadth doctrine . . . aims to keep overly broad statutes off the books in order to avoid chilling constitutionally protected speech."); *see also id.* at 1961; *id.* at 1962. The Adult Entertainment Act has remained on the books and continued to exist as law throughout this litigation. *See Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring) ("[W]e do not remove—'erase'—from legislative codes uncon-

7. See TRO, R. 26, PageID#191.

stitutional provisions. We merely refuse to enforce them in a case, thereby exercising 'the negative power to disregard an unconstitutional enactment.'" (citations omitted)); Thomas W. Merrill, *Judicial Opinions as Binding Law and as Explanations for Judgments*, 15 Cardozo L. Rev. 43, 64 (1993) ("[J]udicial opinions do not result in any change in the codification of enacted law. . . . [S]tatutory provisions that have been declared unconstitutional remain part of the code unless or until repealed by the legislature."). The district court's judgment was nothing more than a temporary non-enforcement policy imposed on defendant Mulroy, which leaves lawbreakers subject to subsequent prosecution (either by Mulroy or by another district attorney) if the judgment is vacated or reversed on appeal. *See id.* ("[I]f a provision is not repealed by the legislature, and the court later changes its mind about the meaning of the Constitution, the provision in question becomes again as fully effective and enforceable in court as if it had never been questioned."); *see also* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 938–42, 986–1000 (2018). The federal judiciary has no authority to confer preemptive pardons on those who knowingly violate statutes in reliance on court decisions that wrongly declare laws unconstitutional or wrongly enjoin their enforcement. *See Edgar*, 457 U.S. at 653 (Stevens, J., concurring in part and concurring in the judgment) ("There simply is no constitutional or statutory authority that permits a federal judge to grant dispensation from a valid state law.").

## CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted.

/s/ Jonathan F. Mitchell

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3940 (fax)
jonathan@mitchell.law

*Counsel for Amicus Curiae*

GENE P. HAMILTON
NICHOLAS R. BARRY
Vice-President and General Counsel
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
nicholas.barry@aflegal.org

Dated: August 29, 2023

## CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements, and type-style requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,373 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*

Dated: August 29, 2023

## CERTIFICATE OF SERVICE

I certify that on August 29, 2023, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Sixth Circuit and served through CM/ECF upon all counsel of record in this case.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*