# No. 23-5611

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

---

FRIENDS OF GEORGE'S, INC.,

*Plaintiff-Appellees*,

v.

STEVEN JOHN MULROY,

*Defendant-Appellant*.

---

On Appeal from the Judgment of the United States District Court for the
Western District of Tennessee (No. 2:23-cv-02163) (Parker, J.)

---

**MOTION OF BLOUNT PRIDE, INC., AND MATTHEW LOVEGOOD TO INTERVENE AS PLAINTIFFS-APPELLEES**

---

## I. INTRODUCTION

This appeal calls on this Court to adjudicate whether Tennessee's Adult Entertainment Act ("AEA"), Tenn. Code Ann. §§7-51-1401, *et seq.*, is constitutional. Blount Pride, Inc.—a non-profit organization formed to celebrate and advance the interests of LGBTQ+ people in Blount County, Tennessee—and Matthew Lovegood, a drag performer (collectively, the "Intervenors"), seek to intervene to argue that it is not. No other litigants are better suited to press that claim. In all of Tennessee, only the Intervenors have been specifically targeted with enforcement of the AEA's criminal penalties, having received a threat letter from a district attorney just ten days ago for planning a Pride event that featured Matthew Lovegood's drag performance. See **Ex. 1** (Threat Letter).

Within a day of being threatened by a district attorney, the Intervenors sought—and on September 1, 2023, they obtained—a temporary restraining order forbidding District Attorney Ryan K. Desmond and additional municipal law enforcement officials from "enforcing, detaining, arresting, or seeking warrants or taking any other action to enforce or threaten to enforce T.C.A. § 7-51-1407" pending further orders. *See Blount Pride, Inc. v. Desmond*, No. 3:23-CV-00316-JRG-JEM, 2023 WL 5662871, at *8 (E.D. Tenn. Sept. 1, 2023). On September 7, 2023, the Eastern District of Tennessee granted the Intervenors a preliminary injunction. See **Ex. 2** (Sep. 7, 2023 Order Granting Preliminary Injunction). The

Intervenors' case is now stayed pending this Court's decision here. *See id.* at 2 ("this case is hereby **STAYED** pending the Sixth Circuit's decision in *Friends of George's*."). Thus, given that all agree that "the issues in [the Intervenors'] case are 'the same or substantially similar legal issues as those in *Friends of George's v. Mulroy*, No. 23-5611,'" *id.*, the Intervenors now move to intervene in this appeal, both as of right and by permission.

## II.  FACTUAL BACKGROUND

i.  **The AEA is Enacted**

On March 2, 2023, Tennessee Governor Bill Lee signed the Adult Entertainment Act ("AEA") into law. *See* Public Chapter No. 2, 113th Gen. Assemb. (2023) (codified at Tenn. Code Ann. § 7-51-1401, -1407). The AEA added two newly-defined phrases to the existing "Adult Oriented Establishments" law: "adult cabaret entertainment" and "entertainer." Under the newly passed AEA,

> (12) "Adult cabaret entertainment":
>
> > (A) Means adult-oriented performances that are harmful to minors, as that term is defined in § 39-17-901, and that feature topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers; and
> >
> > (B) Includes a single performance or multiple performances by an entertainer; and
>
> (13) "Entertainer" means a person who provides:
>
> > (A) Entertainment within an adult-oriented establishment, regardless of whether a fee is charged or accepted for entertainment and regardless of whether entertainment is

>provided as an employee, escort as defined in § 7-51-1102, or an independent contractor; or
>
>(B) A performance of actual or simulated specified sexual activities, including removal of articles of clothing or appearing unclothed, regardless of whether a fee is charged or accepted for the performance and regardless of whether the performance is provided as an employee or an independent contractor.

Tenn. Code Ann. § 7-51-1401(12)–(13).

The AEA also established new criminal penalties. In particular, "[a] first offense for a violation of subdivision (c)(1) is a Class A misdemeanor, and a second or subsequent such offense is a Class E felony." *See* Tenn. Code Ann. § 7-51-1407(c)(3).

### ii.     Friends of George's Challenges the AEA's Constitutionality

The AEA was scheduled to take effect on April 1, 2023. On March 27, 2023, Friends of George's, Inc.—a drag-centric theater company in Memphis, Tennessee, and the Appellee here—filed a complaint in the United States District Court for the Western District of Tennessee asserting that the AEA is facially unconstitutional under the First Amendment and void for vagueness under the Fourteenth Amendment. Friends of George's sought a temporary restraining order enjoining the AEA's enforcement, which the district court granted. *See Friends of George's, Inc. v. Tennessee*, No. 2:23-CV-02163-TLP-TMP, 2023 WL 2755238 (W.D. Tenn. Mar. 31, 2023). After a trial on the merits, the district court also granted Friends of George's final injunctive and declaratory relief. *See Friends of Georges, Inc. v.*

*Mulroy*, No. 2:23-CV-02163-TLP-TMP, 2023 WL 3790583 (W.D. Tenn. June 2, 2023). This appeal followed on June 30, 2023. *See* Case No. 23-5611, DE#1 ("Notice [of Appeal] filed by Appellant Mr. Steven John Mulroy.").

### iii. Blount Pride and Matthew Lovegood Are Threatened

In the late summer of 2023, Blount Pride began advertising its annual Pride festival. The all-ages event was to be held at Maryville College on September 2, 2023. *See* **Ex. 3** (Verified Compl. Case No. 1:23-cv-00196, E.D. Tenn.), at ¶ 4. As advertised, Matthew Lovegood—a drag performer and musician who performs as Flamy Grant—was slated to perform in drag. *Id.* at ¶ 5.

On August 29, 2023—just four days before the event—Blount County District Attorney Ryan K. Desmond transmitted a threat letter titled "Notice Regarding the Adult Entertainment Act." *See* **Ex. 1**. The threat letter was addressed to city and county law enforcement officials, the host site of the Pride event (Maryville College), and Blount Pride as the "*Event Organizer*." *Id.* at 1. The threat letter was emailed directly to Blount Pride's leadership in an email that stated in part: "Please see the attached notice regarding my office's prosecutorial position relative to the Adult Entertainment Act." *See* **Ex. 3** at ¶ 71.

District Attorney Desmond's threat letter stated that the Blount County District Attorney's Office was "aware of a coming event planned for September 2, 2023, that is marketing itself in a manner which raises concerns that the event may

violate certain criminal statutes"—namely, the AEA. **Ex. 1** at 1. His threat letter continued: "The Attorney General for the State of Tennessee maintains that the AEA passes constitutional muster, has appealed [*Friends of George's v. Mulroy*], and further opined that the ruling is binding only on the 30th Judicial District." *Id*. District Attorney Desmond's threat letter also added that "if sufficient evidence is presented to this office that [the AEA has] been violated, our office will ethically and justly prosecute these cases in the interest of justice." *Id.* at 2

Reasonably fearing arrest and prosecution under the AEA and a violation of their First and Fourteenth Amendment rights, the Intervenors promptly retained counsel, and they filed a Verified Complaint and emergency motion for a temporary restraining order the next day. *See* **Ex. 3**. On September 1, 2023, the District Court for the Eastern District of Tennessee granted the Intervenors a temporary restraining order. *See Blount Pride, Inc.*, 2023 WL 5662871, at *8. Yesterday—September 7, 2023—the District Court granted the Intervenors a preliminary injunction. *See* **Ex. 2**. The District Court's order also reflects the Parties' stipulation "that the issues in this case are 'the same or substantially similar legal issues as those in *Friends of George's v. Mulroy*, No. 23-5611 (6th Cir.)[.]'" *See id.* at 2. As a result, the Intervenors' own case is now stayed pending this Court's decision in this appeal. *Id.*

This chronology gives rise to unusual circumstances. Had the Intervenors been denied the preliminary injunction they sought, they could have pursued and

obtained immediate review from this Court themselves. *See* 28 U.S.C. § 1292(a)(1). Because only losers may appeal, though, *see Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1275 (10th Cir. 2001) ("A party generally cannot appeal from a judgment in its favor."), and because the Intervenors won the preliminary injunction they sought, they cannot. Thus, absent intervention, the Intervenors will be forced to depend on another litigant to pursue claims in this Court that a district court has determined will be dispositive of their own.

### III. ARGUMENT

**I. BLOUNT PRIDE AND MATTHEW LOVEGOOD ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.**

"On appeal, [this Court] may grant either intervention of right or permissive intervention." *Carter v. Welles-Bowen Realty, Inc.*, 628 F.3d 790, 790 (6th Cir. 2010) (citing *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir.2006); Fed. R. Civ. P. 24(a), (b)(2)). As a formal matter, though, "[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1010, 212 L. Ed. 2d 114 (2022). Thus, appellate courts consider "the 'policies underlying intervention' in the district courts, including the legal 'interest' that a party seeks to 'protect' through intervention on appeal." *Id.* (internal citation omitted) (quoting Fed. Rule Civ. Proc. 24(a)(2)).

Where—as here—no statute confers an unconditional right to intervene, courts evaluating a prospective intervenor's motion to intervene consider whether intervenors have demonstrated: "(1) that the motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest." *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999). When considering these factors, "Rule 24 should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991)).

A.  **Timeliness**

When considering whether a motion to intervene is timely, courts consider "'all relevant circumstances'" including: "(1) the stage of the proceedings; (2) the purpose for the intervention; (3) the length of time that the movant knew or should've known of its interest in the case; (4) the prejudice to the original parties; and (5) any unusual circumstances militating for or against intervention." *United States v. Michigan*, 68 F.4th 1021, 1024–25 (6th Cir. 2023) (citing *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). For the reasons detailed below, considering all relevant circumstances, the Intervenors' motion to intervene is timely.

Here, the Intervenors did not have any subjective reason to believe that they were under threat of prosecution—and, thus, they did not acquire standing to sue over the unconstitutionality of the AEA—until after they were threatened on August 29, 2023. *See, e.g., McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016) (a credible threat of prosecution exists to support pre-enforcement standing "where plaintiffs allege a subjective chill *and* point to some combination of the following factors . . ."); *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty., Metro Gov't*, 479 F. Supp. 3d 543, 551 (W.D. Ky. 2020) ("A 'credible threat of prosecution' requires an allegation of subjective chill, which Nelson has undeniably alleged, and 'some combination of the following factors: . . . '"); *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 359 (D.D.C. 2020) ("post-*Laird* cases plainly establish that a subjective chill of First Amendment rights, paired with a credible threat of imminent, adverse government action against the claimant, may create a cognizable injury."). Indeed, even after the Intervenors were specifically threatened, the District Attorney who threatened them—who is represented by the same counsel as the Appellant here—maintained that the Intervenors *still* lacked standing to sue. *See* **Ex. 4** (District Attorney Ryan Desmond's Resp. in Opp. to Pls.' Mot. for a Temporary Restraining Order), at 7 (arguing that "**Plaintiffs lack standing** . . . [t]o invoke federal jurisdiction"). Thus, having moved to intervene just ten days after developing the subjective fear and credible threat of enforcement necessary to

maintain the same claims at issue in this appeal—and having intervened just one day after the District Court entered an unappealable-as-to-them order stating that this appeal will be preclusive of the Intervenors' own claims—the Intervenors' motion is timely. Certainly, the Intervenors' rapid, post-threat action cannot be described as the "'wait-and-see' approach" that this Court disfavors. *See United States v. Michigan*, 68 F.4th at 1028.

The Intervenors also note that the issues regarding which they seek to intervene concern questions of law that require no further or different argument from the Appellant (a litigant who, as noted, is also represented by the same attorney as the District Attorney the Intervenors have sued). The Appellee has not yet filed its brief in this appeal, either, so this appeal remains in its early stages. The Intervenors are willing to adhere to the same briefing schedule as the Appellee so as to prevent any delay in this appeal or prejudice to any party in it, too. For all of these reasons, the Intervenors' motion to intervene is timely.

### B. Substantial, Legal Interest in Subject Matter of Case

This Court "subscribe[s] to a 'rather expansive notion of the interest sufficient to invoke intervention of right.'" *Grutter*, 188 F.3d at 398 (quoting *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). Under that "expansive" standard, *id.*, "'close cases should be resolved in favor of recognizing an interest under Rule 24(a).'" *Id.* at 399 (quoting *Miller*, 103 F.3d at 1247).

Here, the Intervenors definitionally have a legal interest in their own pending legal claims, and all agree that this appeal will be outcome-determinative as to nearly all of them. *See* **Ex. 2** at 2. The Intervenors also have obvious interests in both exercising their First Amendment rights and not being arrested, prosecuted, and incarcerated for doing so. Significantly, the District Court stopped well short of ordering that the Intervenors may not be arrested and prosecuted if they do not ultimately prevail in their own case, too. *See Blount Pride, Inc.*, 2023 WL 5662871, at *7 ("the State should remain free to arrest and prosecute Plaintiffs, on a *retrospective* basis, if they violate the Act during the festival *and* ultimately do not prevail on the merits of this suit."). Thus, the Intervenors have a substantial interest in the subject matter of this appeal.

### C. Impairment of Intervenors' Interests Absent Intervention

"To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied." *Miller*, 103 F.3d at 1247 (6th Cir. 1997) (citing *Purnell*, 925 F.2d at 948). "This burden is minimal." *Id*.

Here, denial of intervention would significantly impair the Intervenors' interests. This appeal will be preclusive of nearly all of the Intervenors' own pending claims. Thus, absent intervention, the Intervenors will be forced to rely on other litigants—litigants with whom they have no relationship and whose standing to

maintain the claims that they share has been contested by the Appellant here—to press claims upon which the Intervenors' liberty depends. *See Blount Pride, Inc.*, 2023 WL 5662871, at *7 ("the State should remain free to arrest and prosecute Plaintiffs, on a *retrospective* basis, if they violate the Act during the festival *and* ultimately do not prevail on the merits of this suit."). Thus, it is not only the Intervenors' right to relief that hangs in the balance of this appeal—the Intervenors' literal freedom potentially hangs in the balance as well. As a result, without the ability to argue for themselves, impairment of the Intervenors' substantial legal interests is possible if intervention is denied.

### D. <u>Inadequate Representation</u>

As for the final element: "proposed intervenors' burden in showing inadequacy is 'minimal.'" *Grutter*, 188 F.3d at 400 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); *Linton v. Commissioner of Health & Env't.*, 973 F.2d 1311, 1319 (6th Cir. 1992)). To satisfy this element, "proposed intervenors need show only that there is a *potential* for inadequate representation." *Id.*

Here, the Appellant has made the Intervenors' case for them. In contrast to the Intervenors—who were specifically threatened with the prospect of prosecution ten days ago, *see* **Ex. 1**—the Appellant has devoted most of its brief to the proposition that the Appellee lacks standing to maintain the claims that the

Intervenors intend to raise. *See* **Ex. 5** (Appellant's Principal Br.), at 11–32.

The Intervenors have materially different grounds for asserting their standing to challenge the AEA, though. Based on their own circumstances, the District Court in the Intervenors' case also found that three of this Court's four recognized pre-enforcement standing factors support the Intervenors' standing. *See Blount Pride, Inc.*, 2023 WL 5662871, at *5–6 (finding that the Intervenors established: (1) that "enforcement warning letters [were] sent to the plaintiffs regarding their specific conduct," (2) "an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action," and (3) "the 'defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff.'") (cleaned up).

The Appellee, by contrast, will make materially different arguments in support of its own standing. That matters—and it warrants intervention—because to demonstrate inadequacy, "'[i]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Grutter*, 188 F.3d at 400. Thus, the Intervenors can demonstrate inadequacy, too.

\* \* \*

For all of these reasons, all four factors support allowing the Intervenors to intervene in this appeal as a matter of right. As a result, the Intervenors should be

permitted to intervene here as of right.

## II. ALTERNATIVELY, THIS COURT SHOULD PERMIT THE INTERVENORS TO INTERVENE.

Rule 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Resolution of a motion for permissive intervention is committed to the discretion of the court before which intervention is sought[.]" *Cameron*, 142 S. Ct. at 1011 (citing *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Loc. 283 v. Scofield*, 382 U.S. 205, 217, n.10 (1965); Fed. Rule Civ. Proc. 24(b)(1)(a)). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, the Intervenors rapidly exercised their rights and promptly sought to intervene within a matter of *days* after they were subjectively chilled, faced a credible threat of prosecution, and acquired standing to sue. *See supra* at 8–10. The Intervenors also share common claims with the Appellee that the AEA is unconstitutional under the First and Fourteenth Amendments. *Compare* **Ex. 3** at 19–20, 21–23 (asserting that the AEA violates the First and Fourteenth Amendments), *with Friends of Georges, Inc.*, 2023 WL 3790583, at *30–32 (sustaining Appellee's identical claims that the AEA violates the First and Fourteenth Amendments).

Indeed, the Intervenors' claims are so similar to the claims presented in this appeal that the Appellant's same attorneys have stipulated that "the issues in [the Intervenors'] case are 'the same or substantially similar legal issues as those" presented here. *See* **Ex. 2** at 2. Thus, if this Court does not find that the Intervenors are entitled to intervene in this appeal as a matter of right, then it should permit the Intervenors to intervene by permission instead.

## IV.  CONCLUSION

For the foregoing reasons, Blount Pride and Matthew Lovegood should be permitted to intervene in this appeal, either as of right or by permission.

Respectfully submitted,

By: /s/ Daniel A. Horwitz
DANIEL A. HORWITZ (TN #032176)
LINDSAY E. SMITH (TN #035937)
MELISSA K. DIX (TN #038535)
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
(615) 739-2888
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law

Brice M. Timmons, #029582
Melissa J. Stewart, #040638
Craig A. Edington, #038205
Donati Law, PLLC
1545 Union Ave.
Memphis, TN 38104

(901) 278-1004 (Office)
(901) 278-3111 (Fax)
brice@donatilaw.com
melissa@donatilaw.com
craig@donatilaw.com

Stella Yarbrough, #033637
Lucas Cameron-Vaughn,#038451
Jeff Preptit, #038451
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
syarbrough@aclu-tn.org
lucas@aclu-tn.org
jpreptit@aclu-tn.org

Justin S. Gilbert, # 017079
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423.756.8203
justin@schoolandworklaw.com

*Counsel for Intervenors*

## **CERTIFICATE OF COMPLIANCE**

      As required by Rule 32(g) of the Fed. R. App. P. and 6th Cir. R. 32, I certify that this Motion to Intervene complies with the type-volume limitation set forth in Fed. R. App. P. 27(d)(2)(A) because it contains 3,209 words. As required by Fed. R. App. P. 27(d)(1)(E), this motion also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Times New Roman, 14-point font using Microsoft Word.

      By:   /s/ Daniel A. Horwitz
                DANIEL A. HORWITZ (TN #032176)

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: <u>/s/ Daniel A. Horwitz</u>
      Daniel A. Horwitz (TN #032176)