# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

————————————

FRIENDS OF GEORGE'S, INC.,

*Plaintiff-Appellee*,

v.

STEVEN JOHN MULROY,

*Defendant-Appellant.*

————————————

On Appeal from the Judgment of the United States
District Court for the Western District of Tennessee
(No. 2:23-cv-02163-TLP-tmp)

---

## APPELLANT'S REPLY BRIEF

---

Jonathan Skrmetti
*Attorney General & Reporter
of the State of Tennessee*

Andrée Sophia Blumstein
*Solicitor General*

James R. Newsom III
 *Special Counsel*

J. Matthew Rice
 *Associate Solicitor General
 Counsel of Record*

Robert W. Wilson
 *Senior Assistant Attorney General*

Alicia Gilbert
 *Honors Fellow, Office of the Solicitor
 General*

Office of Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 532-6026
matt.rice@ag.tn.gov

*Counsel for Defendant-Appellant*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................2

   I.    FOG Lacks Article III Standing ................................................2

      A. FOG faces no injury from any provision of the Act. .............................2

         1.   FOG fails to prove an intention to stage performances
             proscribed by the Act. ........................................................2

         2.   FOG fails to prove a certain threat of enforcement. ....................6

      B. FOG faces no injury from the Act's public-property provision............10

      C. No injury can be traced to Mulroy's conduct........................................12

      D. Intervenors lack standing........................................................................13

  II.    The Act Is Not Unconstitutionally Vague. ...................................13

      A. The Act's variable obscenity standard is not vague...............................13

      B. The Act's definition of "community" is not vague. ...............................17

      C. FOG failed to establish facial invalidity. .............................................18

  III.   The Act Does Not Violate the First Amendment. ......................................19

      A. The Act permits "Adult Cabaret Entertainment" in private,
         age-restricted venues. ..........................................................................19

      B. The Act comports with the First Amendment.......................................21

      C. FOG failed to establish facial overbreadth...........................................27

  IV.   The District Court Granted Improper Injunctive Relief.............................28

CONCLUSION ................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Booksellers v. Webb*,
  919 F.2d 1493 (11th Cir. 1990) ..........................................................................14

*Arizona v. Biden*,
  31 F.4th 469 (6th Cir. 2022) .................................................................................28

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002) ....................................................................................... 3, 18

*Ass'n of Am. Physicians & Surgeons v. FDA*,
  13 F.4th 531 (6th Cir. 2021) ...................................................................................5

*Barton v. Barr*,
  140 S. Ct. 1442 (2020) ..........................................................................................23

*Clark v. Martinez*,
  543 U.S. 371 (2005) ...............................................................................................16

*Connection Distrib. v. Holder*,
  557 F.3d 321 (6th Cir. 2009) ......................................................................... 1, 19

*Crawford v. Dep't of Treasury*,
  868 F.3d 438 (6th Cir. 2017) ...............................................................................2, 7

*Davis v. Colerain Twp.*,
  51 F.4th 164 (6th Cir. 2022) ...............................................................................2, 9

*Davis-Kidd Booksellers v. McWherter*,
  866 S.W.2d 520 (Tenn. 1993)................................................................... *passim*

*Dearborne v. State*,
  575 S.W.2d 259 (Tenn. 1978)..................................................................................8

*Doe v. Bolton*,
  410 U.S. 179 (1973)..................................................................................................9

*Doran v. Salem Inn*,
  422 U.S. 922 (1975)................................................................................................28

*Elonis v. United States,*
 575 U.S. 723 (2015) ....................................................................7, 8

*Ent. Prods. v. Shelby Cnty.*,
 588 F.3d 372 (6th Cir. 2009) ...........................................27

*Erie v. Pap's A.M.*,
 529 U.S. 277 (2000) ........................................................22

*Erznoznik v. City of Jacksonville*,
 422 U.S. 205 (1975) ..........................................................5

*Fieger v. Mich. Sup. Ct.*,
 553 F.3d 955 (6th Cir. 2009) ............................................4

*Ginsberg v. New York*,
 390 U.S. 629 (1968) ................................................ *passim*

*Hamling v. United States*,
 418 U.S. 87 (1974) ..........................................................17

*Hutchison v. Marshall*,
 744 F.2d 44 (6th Cir. 1984) ............................................16

*Jenkins v. Georgia*,
 418 U.S. 153 (1974) ........................................................17

*L.W. v. Skrmetti*,
 83 F.4th 460 (6th Cir. 2023) ..................................... 26, 28

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) .........................................................3, 9

*M.S. News v. Casado*,
 721 F.2d 1281 (10th Cir. 1983) ......................................14

*McKay v. Federspiel*,
 823 F.3d 862 (6th Cir. 2016) ............................................6

*NRA v. Magaw*,
 132 F.3d 272 (6th Cir. 1997) ..................................... 9, 10

*Olsen v. Nebraska*,
　313 U.S. 236 (1941) ............................................................................1

*Online Merchs. Guild v. Cameron*,
　995 F.3d 540 (6th Cir. 2021) ...........................................................9

*Phillips v. DeWine*,
　841 F.3d 405 (6th Cir. 2016) ...........................................................10

*Reed v. Town of Gilbert*,
　576 U.S. 155 (2015) ...........................................................................24

*Reno v. ACLU*,
　521 U.S. 844 (1997) ...........................................................................12

*Renton v. Playtime Theatres*,
　475 U.S. 41 (1986) .............................................................................22

*Russello v. United States*,
　464 U.S. 16 (1983) .............................................................................19

*State v. Page*,
　81 S.W.3d 781 (Tenn. Crim. App. 2002) ........................................8

*State v. Spradlin*,
　12 S.W.3d 432 (Tenn. 2000) .............................................................8

*Susan B. Anthony List v. Driehaus*,
　573 U.S. 149 (2014) .......................................................................4, 9

*Turner Broad. Sys., v. FCC*,
　512 U.S. 622 (1994) ...........................................................................24

*United States v. Hansen*,
　599 U.S. 762 (2023) ................................................................. 5, 8, 27

*United States v. Thomas*,
　74 F.3d 701 (6th Cir. 1996) .............................................................18

*United States v. Williams*,
　553 U.S. 285 (2008) ...........................................................................27

*Universal Life Church Monastery Storehouse v. Nabors*,
   35 F.4th 1021 (6th Cir. 2022) ............................................................6, 7

*Vill. of Hoffman Ests. v. Flipside, Hoffman, Ests.*,
   455 U.S. 489 (1982) ............................................................................18

*Virginia v. Hicks*,
   539 U.S. 113 (2003) ............................................................................27

*Williams-Yulee v. Fla. Bar*,
   575 U.S. 433 (2015) ............................................................................25

**Statutes**

Tenn. Code Ann. § 7-51-1401(2) .............................................................23

Tenn. Code Ann. § 7-51-1401(12) ........................................... 2, 11, 15, 23

Tenn. Code Ann. § 7-51-1407(c)(1) ..........................................................2

Tenn. Code Ann. § 39-17-901 ........................................... 13, 15, 16

Tenn. Code Ann. § 39-17-901(2) .............................................................17

Tenn. Code Ann. § 39-17-901(6) .............................................................11

Tenn. Code Ann. § 39-17-901(6)(A)-(B)……………………………………17

Tenn. Code Ann. § 68-1-1006 .................................................................20

**INTRODUCTION**

To prevail, Friends of George's (FOG) must run the table on three layers of reversible errors:  standing, constitutionality, and facial invalidity.  FOG cannot carry its burden on *any* of these issues, much less all of them.

FOG lacks standing.  It presents no evidence of an intention to violate the Adult Entertainment Act, no explanation for its standing-defeating admissions at trial, and no credible argument that a certain threat of enforcement exists.  FOG cannot evade these deficiencies by ignoring its evidentiary shortcomings and presuming away Article III's irreducible minimum.

FOG proves no constitutional violation.  The ubiquitous "harmful to minors" standard is not unconstitutionally vague, as numerous circuits have recognized.  And FOG cannot skirt decades of First Amendment precedent allowing States to limit sexual content to adult-only zones by speculating about the legislature's motives and second-guessing its policy decisions.

FOG flouts the facial standard.  For both claims, FOG has no answer for the numerous constitutional applications of the Act.

The question here is not "the wisdom" of Tennessee's legislation, *Olsen v. Nebraska*, 313 U.S. 236, 246 (1941), but whether the Constitution requires this Court to override the will of the people through a "disfavored" facial challenge, *Connection Distrib. v. Holder*, 557 F.3d 321, 336 (6th Cir. 2009) (en banc).  It does not.

# ARGUMENT

## I.  FOG Lacks Article III Standing.

### A.  FOG faces no injury from any provision of the Act.

All agree that, to establish an injury, FOG must show (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest[] but proscribed by" the Act and (2) "a certain threat of prosecution if [it] does indeed engage in that conduct." *Crawford v. Dep't of Treasury*, 868 F.3d 438, 454-55 (6th Cir. 2017) (emphasis and quotations omitted).  FOG proves neither.

#### 1.  FOG fails to prove an intention to stage performances proscribed by the Act.

FOG has not proven an intention to stage "adult cabaret entertainment" that is "harmful to minors."  Tenn. Code Ann. §§ 7-51-1407(c)(1), -1401(12).  To qualify as "harmful to minors" under § 39-17-901(6), a performance must, among other things, "lack[] serious literary, artistic, political or scientific values for minors" when "[t]aken as [a] whole."  But FOG (1) failed to present evidence sufficient to analyze value and (2) conceded that its shows *do* have value for reasonable 17-year-old minors.  Opening Br. 14-15.  For either reason, FOG lacks standing.

***Insufficient Evidence.***  FOG did not prove an intention to stage performances that lack value for minors.  It presented no evidence establishing the content of future shows.  Instead, FOG pointed to snippets from its prior shows "as evidence of the probable content of [its] future speech." *Davis v. Colerain Twp.*, 51 F.4th 164, 173

2

(6th Cir. 2022). But FOG never introduced a full show into evidence. Without reviewing "the work as a whole"—meaning an *entire* show, not merely "a single explicit scene"—this Court cannot determine the value (or lack thereof) of FOG's prior works. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 248 (2002); Opening Br. 14, 21-22. This defect, alone, ends FOG's case because "[t]he party invoking federal jurisdiction bears the burden" of establishing standing with "evidence adduced at trial." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

FOG and Intervenors flat-out ignore this evidentiary deficiency. Instead, they contend that the State mixes the "merits" and standing inquiries by raising the narrowing construction of "harmful to minors" from *Davis-Kidd Booksellers v. McWherter*, 866 S.W.2d 520, 528 (Tenn. 1993). FOG Br. 11-12; Intervenors Br. 8-11. That is both wrong, *see infra* 4-5, and irrelevant for this argument. FOG's evidentiary shortcoming does not depend on any construction from *Davis-Kidd*. Without the entirety of a prior show in the record, there is inadequate evidence to analyze the value of FOG's shows under *any* "value" standard and thus no basis for concluding that FOG's future shows would lack value.

***Case-Ending Admissions.*** Independently, FOG lacks standing because it has conceded that its shows do not violate the Act's provisions, as construed by the Tennessee Supreme Court. Under *Davis-Kidd*, § 39-17-901's "harmful to minors" definition includes "only . . . materials which lack serious literary, artistic, political, or

scientific value *for a reasonable 17-year-old minor*." 866 S.W.2d at 528 (emphasis added); Opening Br. 12-13, 20-21. At trial, FOG admitted that its shows have artistic value to 16- and 17-year-olds. Opening Br. 15. That admission thwarts any attempt to establish standing.

FOG and Intervenors err in asserting that this argument, by heeding *Davis-Kidd*'s construction, conflates the merits and standing inquiries. In the pre-enforcement context, the threshold question of whether a statute proscribes certain conduct differs from the merits question of whether the statute violates the Constitution. The Supreme Court has recognized as much, directing courts to analyze whether a pre-enforcement plaintiff has proven "an intention to engage in a course of conduct . . . *proscribed by a statute*." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quotations omitted and emphasis added). A court cannot determine whether conduct is "proscribed by a statute," without first determining what the statute covers. Opening Br. 19-20.

Accepting as much, Intervenors suggest that FOG must merely show that its intended actions are proscribed under an "arguably correct" interpretation of the Act. Intervenors Br. 9. But FOG fails Intervenors' "arguably correct" test because *Davis-Kidd*'s narrowing construction inarguably controls, Opening Br. 12-13, 20-21; *infra* 15-17, and leaves FOG's intended conduct outside the Act, *Fieger v. Mich. Sup. Ct.*, 553 F.3d 955, 965 (6th Cir. 2009).

More fundamentally, plaintiffs cannot establish Article III standing based on an arguable—*but incorrect*—interpretation of the challenged law. That rule would enable a federal court to facially invalidate a law even when the plaintiff admits it lacks standing under a proper interpretation of the law. The Court should not short-circuit core case-or-controversy limits by conferring standing based on a "misinterpretation of the [challenged law]." *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 544 (6th Cir. 2021).

The Article III problems with an "arguably correct" approach to pre-enforcement standing are particularly acute with overbreadth claims, which require courts to compare a statute's constitutional applications with its unconstitutional applications. *United States v. Hansen*, 599 U.S. 762, 784 (2023). When conducting that comparison (the merits question), a court often will not need to interpret the aspect of the law that is critical to determining whether the law proscribes plaintiff's intended conduct. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 217 (1975) (finding prohibition on nudity at a "drive-in theater" overbroad without ever interpreting the scope of "drive-in theater"). This Court should not expand standing through an "arguably correct" rule and amplify the overbreadth doctrine's existing Article III problems. *Hansen*, 599 U.S. at 785 (Thomas, J., concurring).

## 2.  FOG fails to prove a certain threat of enforcement.

Separately, even if FOG did intend to violate the Act, it has not proven a *certain* threat of prosecution.  Opening Br. 15-19.  All agree that the Court should analyze the factors set out in *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016).  None favors FOG.

***No History of Past Enforcement.***  FOG cannot carry *its burden* of establishing an enforcement threat through a history of prior enforcement.  Opening Br. 16.

And looking to enforcement of obscenity laws before the Act's passage makes matters worse.  FOG has never faced enforcement under obscenity laws, like § 39-17-911, that "include[] the same prohibition" on minors attending performances that are "harmful to minors."  Opening Br. 17.  FOG draws distinctions between the Act and § 39-17-911—like the fact that § 39-17-911 "regulates commercial activity" and applies to any "presentation."  FOG Br. 16.  But not one of those distinctions matters: FOG engaged in "commercial activity" by selling tickets, Transcript, R.81 at 1069, and it put on a "show or presentation," *id.* at 1067-69.  Indeed, FOG has put on shows subject to § 39-17-911 *for over a decade* without any threatened enforcement.

FOG's reliance on *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022), misses the mark.  There, this Court found that the legislature "may have emboldened prosecutors" to enforce a law by (1) "making the proscription so much clearer" and (2) changing the "enforcement mechanism" where

it was "not clear that . . . prosecutors had even realized they could collaterally enforce" the prior law. *Id.* at 1035. Here, the Act does not make the prohibition on performances "harmful to minors" *any* "clearer"; it is the same standard. And prosecutorial authority to enforce § 39-17-911 has never been in doubt.

*No Warning Letters.* FOG received no warning letter, so this factor cannot establish an enforcement threat. Opening Br. 17.

*No Attributes Making Enforcement Easy.* The Act's enforcement mechanism mirrors the standard approach for criminal laws and does not make enforcement easy. Opening Br. 17-18.

FOG responds by claiming its performances may fall within the scope of the statute. FOG Br. 13. But that argument goes to whether FOG intends to engage in conduct proscribed by the Act, not whether it faces "a *certain* threat of prosecution if [it] does indeed engage in that conduct." *Crawford*, 868 F.3d at 454.

FOG then argues the Act "is easier to enforce because it lacks a scienter requirement," pointing out that § 39-11-301's catch-all mens rea applies only to Title 39. FOG Br. 13-14. But courts "interpret criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 575 U.S. 723, 734 (2015) (cleaned up). This presumption, contrary to FOG contentions, FOG Br. 27, is not limited to federal criminal statutes; it is rooted in the notion that, generally, "wrongdoing must be conscious

to be criminal"—a principle that applies to federal and state crimes. *Elonis*, 575 U.S. at 734. And the Tennessee Supreme Court has inferred a knowing mens rea for all "criminal statutes regulating obscenity." *Davis-Kidd*, 866 S.W.2d at 528. *Davis-Kidd* clearly was not relying solely on § 39-11-301, as that statute says that "recklessness suffices." *Id.*; *see State v. Page*, 81 S.W.3d 781, 786 (Tenn. Crim. App. 2002). Instead, it cited U.S. Supreme Court precedent to "incorporate[] the traditional state of mind required" for obscenity—knowledge. *Hansen*, 599 U.S. at 779.

Intervenors alternatively assert that all Tennessee criminal laws satisfy the easy-enforcement factor because state law "authorizes citizen-initiated indictments by citizen complainants." Intervenors Br. 14-15. This argument falls apart, though, because district attorneys retain "the sole duty, authority, and discretion to prosecute criminal matters." *State v. Spradlin*, 12 S.W.3d 432, 436 (Tenn. 2000). And they have "virtually unbridled discretion in determining whether to prosecute" or dismiss a case. *Dearborne v. State*, 575 S.W.2d 259, 262 (Tenn. 1978).

*Disavowal of Enforcement.* Lastly, FOG cannot show that Mulroy refused to disavow enforcement against it. Opening Br. 18. FOG and Intervenors harp on Mulroy's general commitment to "to enforce all . . . Tennessee laws," including the Act. FOG Br. 17-18; Intervenors Br. 12-13. But that statement proves nothing because it is not directed *at FOG*. FOG and Intervenors ignore this Court's repeated statement that the disavowal inquiry looks for a "refusal to disavow enforcement . . .

against a particular plaintiff." *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021) (quotations omitted). And they ignore *Davis*'s instruction that a generalized statement that an officer might enforce a law "in the *abstract*" does not "suggest that he would enforce the rule against anything like [plaintiff's] *specific* speech." 51 F.4th at 174.

*Presumption of Enforcement*: Lacking a certain threat of enforcement, FOG and Intervenors ask this Court to "presume that FOG faces a . . . threat of imminent enforcement" because of the Act's recent passage. FOG Br. 17; Intervenors Br. 17-21. But this Court has never presumed away Article III's irreducible constitutional minimum. Intervenors Br. 19 (admitting as much). Rather, it has stated that "the mere existence of a statute . . . is *not* sufficient" to show standing, *NRA v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) (emphasis added), and has instead required "evidence" establishing a "threat of enforcement," *Davis*, 51 F.4th at 174. That approach recognizes that the burden of proving standing rests with the plaintiff. *Lujan*, 504 U.S. at 561. The decision in *Doe v. Bolton* did not somehow flip that burden by merely recognizing that moribund statutes present no risk of enforcement, whereas statues that are "recent and not moribund" may pose a risk. 410 U.S. 179, 188 (1973). If it had, *Driehaus* would have said so. To the extent other courts have overread *Doe*, this Court should not follow course. Either way, the State's failure to enforce § 39-17-911 against FOG negates this argument. *Supra* 6-7.

In sum, "[t]he mere possibility of criminal sanctions applying does not in and of itself create a case or controversy." *Magaw*, 132 F.3d at 293 (quotations omitted). FOG must prove a *certain* threat of enforcement and failed to do so.

**B.     FOG faces no injury from the Act's public-property provision.**

At a minimum, FOG lacks standing to challenge the Act's public-property provision. Opening Br. 23-26. The injury requirement operates on a provision-by-provision basis, even when overbreadth claims are asserted. *Id.* And FOG can point to no injury tied to the public-property provision.

FOG and Intervenors each devote a mere paragraph to defending standing on this provision. FOG claims that "the Supreme Court has carved out an exception to traditional rules of prudential standing" for overbreadth claims. FOG Br. 51. But the State challenges *Article III* standing, not prudential standing. Any relaxation of the standing rules for overbreadth claims does not apply to the requirements "mandated by Article III itself, such as the injury-in-fact requirement." *Phillips v. DeWine*, 841 F.3d 405, 417 (6th Cir. 2016). A mountain of precedent holds that even under the overbreadth doctrine, a plaintiff must establish injury for *each* provision challenged. Opening Br. 25-26.

FOG next contends that "the [Act] would affect its participation in the Midsouth Pride Festival, an outdoor event held on public property." FOG Br. 51. But FOG's only connection to Pride is "being present," Transcript, R.81 at 1109, and

"pass[ing] out flowers" in a parade, *id.* at 1112. The evidence shows that FOG "never produced an outdoor event." *Id.* at 1109.

Even assuming FOG's performers dress in drag at Pride and further assuming that FOG intends to attend a future festival (neither of which is established by the record), there is no credible argument that attending a festival or distributing flowers constitutes an "adult-oriented performance[]" or is "harmful to minors." Tenn. Code Ann. § 7-51-1401(12). There is no proof that FOG's activities at Midsouth Pride involved "any description or representation" of "nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse"; no proof that they "appeal[ed] predominantly to the prurient, shameful or morbid interests of minors"; no proof that they were "patently offensive"; and no proof that they "lack[ed] serious literary, artistic, political or scientific values for minors." *Id.* § 39-17-901(6). Thus, FOG demonstrates no injury from the public-property provision.

Intervenors contend that "drag performance is inherently adult-oriented entertainment" and all drag "arguabl[y]" violates the Act. Intervenors Br. 35. But, *for one*, Intervenors cannot identify a "performance" by FOG at Pride, nor a "description or representation" of "nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse." Tenn. Code Ann. § 39-17-901(6). *For two*, apparently missing the irony, Intervenors' position would require a categorical rule that all drag, at least arguably, lacks value to minors *as a matter of law*. The "societal value

requirement" "is not judged by contemporary community standards"; it "allows appellate courts to impose some limitations and regularity . . . by setting, as a matter of law, a national floor for socially redeeming value." *Reno v. ACLU*, 521 U.S. 844, 873-74 (1997). *For three*, Intervenors inaccurately represent that another district attorney has treated the "mere planned performance of a drag show in [a] public Pride event [as] violat[ing] the AEA." Intervenors Br. 35. The alluded-to letter says just the opposite: that "[i]t is certainly possible that the event [containing a drag show] will *not* violate any of the criminal statutes." *Blount Pride v. Desmond*, No. 3:23-cv-00316, Dkt. 1-3 at 100 (E.D. Tenn.) (emphasis added). Regardless, a risk of false prosecution does not provide standing. Opening Br. 23.

FOG and Intervenors do not establish standing to challenge the public-property provision. Nor do they address the *different* First Amendment framework—the "forum analysis"—governing restrictions on government-controlled property.

### C.    No injury can be traced to Mulroy's conduct.

Even assuming an injury, it would not be traceable to Mulroy. America First Br. 1-4. When the defendant repeatedly rejects a broad reading of the law and insists that a party is *not* violating the law, any impairment of speech is attributable to self-censorship, not the defendant's conduct. *Id.*

**D.    Intervenors lack standing.**

As the motions panel recognized, Intervenors "lack standing" in this case because "Mulroy—the only defendant in this case—cannot enforce the statute in Blount County."  Intervention Order, CA6 ECF 35-1, at 2-3.  Thus, Intervenors' participation cannot remedy FOG's standing deficiencies.

**II.    The Act Is Not Unconstitutionally Vague.**

The ubiquitous, decades-old definition of "harmful to minors" is not unconstitutionally vague.  Opening Br. 26-32.  Holding otherwise would create a clear circuit split and defy Supreme Court precedent.  Perhaps recognizing as much, FOG's Brief shifts to a *different* vagueness challenge to the Act's judicial-district community standard.  FOG Br. 43-47.  That argument—which was not addressed by the district court—likewise lacks merit.

**A.    The Act's variable obscenity standard is not vague.**

FOG contends that § 39-17-901's definition of "harmful to minors" is impermissibly vague because its reference to "minors" could include "an infant, a five-year old, or a person just shy of age seventeen."  FOG Br. 47.  That is wrong for two reasons.  *First*, as other Circuits have recognized, the Supreme Court rejected that argument in *Ginsberg*.  Opening Br. 28-30.  *Second*, the "harmful to minors" definition here applies only to materials that lack value "for a reasonable 17-year-old minor."  *Davis-Kidd*, 866 S.W.2d at 528; Opening Br. 31; *see id.* at 12-13, 20-21.

***Ginsberg* governs.** *Ginsberg* held that variable obscenity standards—i.e., standards that modify the governing obscenity standard for "minors"—are not unconstitutionally vague. Opening Br. 28-30. To evade that holding, FOG contends that the definition of "harmful to minors" "in *Ginsberg* is not the same as the definition at issue here." FOG Br. at 48. But the fact that *Ginsberg*'s statute modified the *Memoirs* obscenity standard, rather than the near-identical *Miller* standard, makes no difference. Opening Br. 29-30. The Tenth and Eleventh Circuits have squarely held as much in decisions FOG ignores. *M.S. News v. Casado*, 721 F.2d 1281, 1286-87 (10th Cir. 1983); *Am. Booksellers v. Webb*, 919 F.2d 1493, 1503 (11th Cir. 1990).

Nor can FOG distinguish *Ginsberg* by citing the statute's affirmative defense for "an honest mistake" *in determining one's age*. FOG Br. 48. Nothing in *Ginsberg*'s vagueness analysis turned on that affirmative defense. 390 U.S. at 643. Nor could it have. Just as an insanity defense cannot clarify elements of a vague criminal provision, the honest-mistake defense (how old a person looked) could not elucidate any alleged vagueness in the harmful-to-minors definition in *Ginsberg*. Moreover, FOG identifies no cases indicating that affirmative defenses somehow cure vagueness—an odd proposition that would generally harm criminal defendants given the differing burdens.

Lastly, FOG claims that, unlike the statute in *Ginsberg*, the Act does not allow for parental choice or include a mens rea requirement. FOG Br. 48. Yet, FOG never

explains how parental choice (or a lack thereof) affects vagueness, and no logical reason is apparent. And the Act *does* have a scienter requirement. It implicitly incorporates the knowing mens rea applied to all Tennessee obscenity statutes. Opening Br. 50; *supra* 7-8. Regardless, *Ginsberg* did not tie its vagueness analysis to a scienter requirement; it held that "the [harmful-to-minors] definition . . . *gives . . . adequate notice of what is prohibited*." 390 U.S. at 643 (emphasis added).

Indeed, FOG effectively admits that a law setting the obscenity standard by reference to "minors"—like the one in *Ginsberg*—is not vague. FOG states that such laws set a standard based on the "youngest possible audience." FOG Br. 7. That argument demonstrates that while a standard referencing "minors" may be *broader* (i.e., may cover more content), it does not leave citizens guessing what standard applies (i.e., it is not vague).

This Court should adhere to *Ginsberg* and avoid a circuit split.

**Davis-Kidd removes any doubt.** Even without *Ginsberg*, *Davis-Kidd* dooms FOG's vagueness claim. Opening Br. 31; *see id.* at 12-13, 20-21. There, the Tennessee Supreme Court construed § 39-17-901's "harmful to minors" definition to cover "only . . . those materials which lack serious literary, artistic, political, or scientific value *for a reasonable 17-year-old minor*." *Davis-Kidd*, 866 S.W.2d at 528 (emphasis added). And the Act expressly incorporates § 39-17-901's "harmful to minors" definition. Tenn. Code Ann. § 7-51-1401(12). Thus, *Davis-Kidd*'s

construction negates FOG's contention that "minors" could include "an infant, a five-year old, or a person just shy of age seventeen," FOG Br. 47, and dispels any vagueness concern, Opening Br. 31.

Undeterred, FOG doubles down on its argument that *Davis-Kidd*'s construction does not apply to the Act. First, FOG suggests that *Davis-Kidd* "applied [its] narrowing construction" to a provision setting out the offense (§ 39-17-914(a)), not the provision defining "harmful to minors" (§ 39-17-901). FOG Br. 20-21. But *Davis-Kidd* explicitly interpreted the "third prong" of the harmful-to-minors definition. Opening Br. 20-21.

FOG next argues that *Davis-Kidd*'s narrowing construction of § 39-17-901 was "limited to its facts" and does not "reach . . . beyond [the] display statute" to different "context[s]." FOG Br. 21. But this is not a case involving the same language in a different statute; *Davis-Kidd* interpreted the precise statutory definition at issue in this case, § 39-17-901. Section 39-17-901's text must have the same meaning in all its applications. *Clark v. Martinez*, 543 U.S. 371, 378-80, 382 (2005); Opening Br. 13.

Finally, FOG deems *Davis-Kidd*'s interpretation "obsolete" because *federal* courts have interpreted a "substantially similar" *federal* law differently. FOG Br. 21-23. But it is Federalism 101 that "a federal court may not set aside the state court's interpretation of state statutes." *Hutchison v. Marshall*, 744 F.2d 44, 46 (6th

Cir. 1984). That a federal court interprets a federal law differently does not displace *Davis-Kidd*'s definitive interpretation of Tennessee law.

The upshot: *Davis-Kidd*'s interpretation of "harmful to minors" controls and provides an independent basis for rejecting FOG's vagueness argument.

## B. The Act's definition of "community" is not vague.

FOG's fallback challenge to the "community" definition fares no better. FOG argues that the Act is vague because it defines the prohibited obscenity based on community standards in "the judicial district." FOG Br. 44-45. But FOG cites no cases supporting that proposition. The reason is clear: The Supreme Court has explicitly stated that "[a] State may choose to define an obscenity offense in terms of 'contemporary community standards' as defined in *Miller* without further specification . . . *or it may choose to define the standards in more precise geographic terms*." *Jenkins v. Georgia*, 418 U.S. 153, 157 (1974) (emphasis added).

The Act does just that. Tenn. Code Ann. § 39-17-901(2), (6)(A)-(B). And there is no constitutional problem with defining the relevant "community" for an obscenity standard as a judicial district. "The fact that distributors of allegedly obscene materials may be subjected to varying community standards *in the various federal judicial districts* into which they transmit the materials does not render a . . . statute unconstitutional." *Hamling v. United States*, 418 U.S. 87, 106 (1974) (emphasis added). FOG gives no good reason for treating state judicial districts

differently. In fact, defining the relevant community based on state districts mirrors the default rule—that "obscenity is determined by the standards of the community where the trial takes place." *United States v. Thomas*, 74 F.3d 701, 711 (6th Cir. 1996); *Ashcroft*, 535 U.S. at 576-77 ("[A] juror applying community standards will inevitably draw upon personal knowledge of the community or vicinage from which he comes.").

Put simply, even if the Act creates "31 separate" and "radically different" obscenity standards within Tennessee (which seems hyperbolic), FOG Br. 45-46, that creates no vagueness problem. "If a [performer] chooses to [perform] in[] a particular community, . . . it is the [performer's] responsibility to abide by that community's standards." *Ashcroft*, 535 U.S. at 583.

## C. FOG failed to establish facial invalidity.

Even assuming the Act could be vague in certain applications, it is not *facially* unconstitutional. Whether FOG must "demonstrate that the law is impermissibly vague in all of its applications" or satisfy some lesser standard, it cannot carry its burden—and, indeed, has not even tried to. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 497 (1982); Opening Br. 31-32. FOG nowhere discusses the breadth of the Act's allegedly unconstitutional applications or addresses the numerous performances that clearly fall within its scope—like performances involving

stripping or topless dancing. Opening Br. 32. These "numerous constitutional applications . . . end the matter." *Connection Distrib.*, 557 F.3d at 335.

## III. The Act Does Not Violate the First Amendment.

Properly construed, the Act poses no First Amendment problem, and it certainly does not warrant invocation of the disfavored overbreadth doctrine.

### A. The Act permits "Adult Cabaret Entertainment" in private, age-restricted venues.

The Act is best read to apply in private locations where the adult cabaret entertainment could permissibly be viewed by a minor. Opening Br. 33-38. FOG's contrary argument—that the Act bars adult cabaret entertainment virtually everywhere—makes hash of the Act's location provisions, conflicts with the statutory scheme, departs from legislative intent, and flouts constitutional avoidance principles. *Id.* FOG offers no response to this panoply of problems.

Instead, FOG makes two skin-deep arguments. First, FOG points out that other obscenity statutes apply where minors are "*lawfully* admitted," and that qualifier is missing here. FOG Br. 26. But "[l]anguage in one statute usually sheds little light upon the meaning of different language in another statute, even when the two are enacted at or about the same time." *Russello v. United States*, 464 U.S. 16, 25 (1983). Far from simultaneous enactment, the legislature passed FOG's cited language over thirty years before the Act. 1990 Tenn. Pub. Acts 939, ch. 1092, § 5. Moreover, FOG's argument could just as easily be used *against* its sweeping

interpretation, as other state laws say "could *possibly*" and the Act contains no such modifier.  *See* Tenn. Code Ann. § 68-1-1006 (emphasis added).

Next, FOG claims that this Court would have to "supply limiting language" to adopt the State's interpretation.  FOG Br. 25-26.  Not true.  The Court simply has to interpret the modal verb "could" in line with its ordinary meaning:  referring to "what someone or something was able or *allowed to do*."  *Could*, Cambridge English Dictionary[1]; *see also* Webster's New World Dictionary 316 (3d Coll. Ed. 1988) (defining "could" as "expressing permission").  That reading comports with the common-sense understanding that legislatures do not draft laws presuming that existing laws will be broken—a notion supported here by the legislative history's repeated references to "age-restricted venues."  Opening Br. 35-36.  The State's reading of "could" is so natural, in fact, that FOG itself unwittingly adopts it.  FOG Br. 10-11 (stating that FOG can "comply with the AEA" by "strictly enforc[ing] age restrictions on its future shows"); Transcript, R.81 at 1069.

The State is not asking this Court to re-write the Act.  It is asking the Court to reject an implausible interpretation that renders the Act's location provisions meaningless and upends the reticulated scheme addressing adult-oriented establishments.  Opening Br. 34-36.  And it is asking this Court to adhere to the foundational principle

---

[1] https://dictionary.cambridge.org/us/dictionary/english/could.

that all *reasonable* constructions must be adopted to avoid constitutional problems. *Id.* at 36-37.

### B.     The Act comports with the First Amendment.

Heightened scrutiny is not warranted, and the Act would survive it anyway.

***No Heightened Scrutiny.***  The State has never disputed that the Act regulates performances containing certain content.  But, contrary to FOG's assertion, that does not mean strict scrutiny applies.  Even if a law's text is content-based in a technical sense, courts apply the lesser standard governing content-neutral restrictions when statutes (1) create adult-only zones for sexual content or (2) address secondary effects.  Opening Br. 38-40.  Both of these independent doctrines apply here.

*Adult-only zones*:  At least three Circuits have recognized that strict scrutiny does not apply when a statute prohibits minors from accessing content that is "harmful to minors," if adults can still obtain the content.  *Id.* at 39 (compiling cases).  That rule for adult-only zones squarely applies here.  *Id.*  Yet, in almost 90 pages of briefing, FOG and Intervenors spend not one sentence to address the rule applied in the other Circuits.  That silence speaks volumes.

*Secondary Effects*:  The well-established secondary-effects doctrine likewise bars heightened scrutiny.  *Id.* at 40.  Here, by protecting minors from sexually-explicit content, the Act inherently addresses the secondary effects associated with exposure to such content—an increase in sexual exploitation crimes.  *Id.*  The

secondary-effects doctrine thus applies, leaving FOG's claim of an allegedly illicit motive entirely irrelevant. *Renton v. Playtime Theatres*, 475 U.S. 41, 47-48 (1986); *see* Dramatists Br. 16 (admitting as much).

Again, FOG ignores the State's argument. And Intervenors argue (barely) that the secondary-effects doctrine cannot apply because the Act governs performances that occur outside of an establishment for no fee. Intervenors Br. 27. But no case law supports those made-up limitations on the doctrine. *See Erie v. Pap's A.M.*, 529 U.S. 277, 295 (2000) (plurality) (applying secondary-effects doctrine to public nudity ban); *id.* at 310 (Souter, J., concurring) (agreeing that doctrine applies). For good reason: The secondary effects still exist regardless of the location of, or fee associated with, the performance. Opening Br. 40.

Sidestepping the State's arguments, FOG claims heightened review applies because the Act (1) involves viewpoint discrimination, and (2) furthers an impermissible purpose. Both arguments lack merit. *Id.* at 41-47.

*No Viewpoint Discrimination*: The Act does not discriminate based on viewpoint. While the Act references specific categories of performers, it includes a catchall—"or similar entertainers"—that ensures there is no viewpoint discrimination among "adult-oriented performance[s]" that are "harmful to minors." Indeed, FOG cannot point to a single example where a performer's identity or viewpoint dictates whether they fall within the scope of the Act. *Id.* at 41-43.

FOG argues that the "list of performers is not 'merely illustrative,' because 'adult cabaret' is defined *exclusively* by the featured performers." FOG Br. 35. But the definition at issue here is "adult cabaret entertainment," not "adult cabaret." *Compare* Tenn. Code Ann. § 7-51-1401(2) *with* § 7-51-1401(12). Just because the list of performers does work in the definition of "adult cabaret" does not mean that it does work in "adult cabaret entertainment." FOG's quizzical argument focuses on the wrong provision altogether.

FOG then straw-mans the State's argument by claiming that it resists the notion that "the presence of a performer in one of these categories in the performance is an element of the crime." FOG Br. 36. That is not the argument. The argument is that the identity-based clause *does no additional work* beyond the "harmful to minors" clause—i.e., the reference to specific types of performers clarifies the type of speech that is "harmful to minors" *without* narrowing the covered speech. Opening Br. 41-43. "[R]edundancies are common in statutory drafting." *Barton v. Barr*, 140 S. Ct. 1442, 1453 (2020).

For example, if a statute banned performances that (1) contain full nudity and (2) include persons with no clothes on, then the second, identity-based clause imposes no viewpoint restriction. The same goes here. Because the identity-based clause does not restrict any speech beyond the constitutionally permissible "harmful to minors" clause, it cannot be the basis for finding viewpoint discrimination.

Intervenors claim that the Act distinguishes between "entertainers" and "non-entertainers." Intervenors Br. 25-26. But not every "speaker distinction[]" calls for heightened review—only those that "reflect the Government's preference for[,] . . . or aversion to[,] what the disfavored speakers have to say[]." *Turner Broad. Sys., v. FCC*, 512 U.S. 622, 645, 658 (1994). Intervenors provide no coherent argument that the government is preferring one *viewpoint* over another in distinguishing between "entertainers" and "non-entertainers."

*No Impermissible Purpose*:  Nor can FOG obtain heightened review through the purpose-or-justification inquiry of *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015). Opening Br. 44-48. That inquiry looks to whether a statute's *stated* justification involves the improper suppression of expression; it does not allow guesswork as to legislative motives. *Id.* at 44-45. Regardless, a presumption of legislative good faith applies, South Carolina Br. 3-9, and the objective indicators of legislative purpose reveal no discriminatory purpose, *id.* at 13-16, Opening Br. 46-47.

FOG has no persuasive answer. It does not address the abundance of case law condemning a freewheeling inquiry into subjective motives. FOG Br. 36-39. And, even on its own terms, FOG's subjective-motives argument rests on strained inferences. FOG claims that the text shows an impermissible purpose to target specific speakers, FOG 37, but ignores the fact that the Act copies verbatim from laws that have been on the books *for decades*, Opening Br. 46. FOG points to the lack of

affirmative defenses but fails to explain how that proves animus. And FOG cherry-picks from the legislative history, without acknowledging that isolated statements cannot establish animus or negate the abundance of evidence showing no improper purpose. *Id.* at 46-47.

These arguments come nowhere close to overcoming the presumption of good faith. Indeed, the position is so weak that FOG stated at trial that it was no longer "maintaining the argument that the legislature specifically intended to target drag performers." Transcript, R.81 at 1236. Strict scrutiny does not apply.

***Satisfies Constitutional Review.*** Even under strict scrutiny, the Act survives review because it furthers a compelling interest through narrowly tailored means.

*Compelling Interest*: The Act furthers the State's compelling interest in safeguarding the physical and psychological well-being of minors. Opening Br. 48. FOG recognizes that interest but claims that "the State does not have a compelling interest in protecting children from indecent content only from certain speakers." FOG Br. 40 (emphasis omitted). To the extent that argument turns on underinclusiveness, it fails because a "State need not address all aspects of a problem in one fell swoop." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015). To the extent the argument imports FOG's impermissible purpose theory, it fails for the reasons previously stated. Opening Br. 44-47; *supra* 24-25.

*Narrow Tailoring*:  The Act is narrowly tailored to limit the exposure of children to harmful content, while still allowing adults to view the performances in an adult-only zone.  Opening Br. 48-49.

FOG argues the Act lacks tailoring because it contains no affirmative defense for parental consent and applies to non-commercial performances.  FOG 41.  But the State's interest in "preserving and promoting the welfare of [a] child" does not disappear with a parent's consent.  *L.W. v. Skrmetti*, 83 F.4th 460, 473 (6th Cir. 2023) (quotations omitted); Opening Br. 49.  And nothing about the State's interest depends on whether the harmful content is commercial or non-commercial.  FOG proposes random limitations to the Act without recognizing that those limitations would *impair the State's interest.*

The rest of FOG's scattershot arguments (at 42) tread ground already covered—scienter and the scope of the adults-only provision.  *Supra* 7-8 (scienter); *id.* at 21 (adult-only zones).

Intervenors claim that the Act is "overinclusive[]" because it applies to locations where children are not present.  Intervenors Br. 32-33.  But they fail to explain how adult cabaret entertainment "could be viewed" by a minor if "children are not, in fact, present."  *Id.* at 32.  To state that argument is to refute it.  Reaching,

Intervenors then focus on a *different* provision (the public-property provision) that is not at issue and that faces a different inquiry (the forum analysis). *Supra* 10-12.

The Act survives review even under strict scrutiny.

## C.    FOG failed to establish facial overbreadth.

Even assuming some unconstitutional applications exist, the Act is not *facially* overbroad. Opening Br. 51. The Supreme Court placed "the burden of demonstrating . . . substantial overbreadth" on the challenger, *Virginia v. Hicks*, 539 U.S. 113, 122 (2003), and has "*vigorously enforced* the requirement that a statute's overbreadth be substantial . . . relative to the statute's plainly legitimate sweep," *United States v. Williams*, 553 U.S. 285, 292 (2008) (emphasis added and omitted). Yet, FOG does not even attempt to carry that burden. At no point has FOG established that "the ratio of unlawful-to-lawful applications" is "lopsided"—or even recognized that it must do so. *Hansen*, 599 U.S. at 784. FOG altogether ignores the plethora of constitutional applications of the Act. Opening Br. 51.

Instead, FOG claims the Act is "overbroad" because, under its interpretation, the statute applies broadly. FOG Br. 50. But just because a statute applies broadly does not mean that it is unconstitutionally overbroad; FOG must show the breadth causes a "substantial number of unconstitutional applications." *Ent. Prods. v. Shelby Cnty.*, 588 F.3d 372, 394 (6th Cir. 2009). It cannot do so.

**IV.  The District Court Granted Improper Injunctive Relief.**

Any injunctive relief should be limited.  *First*, any injunction should be limited to the adults-only provision because FOG lacks standing to challenge the public-property provision.

*Second*, any injunction should be limited to FOG alone.  Opening Br. 52-53.  Even with facial challenges, an "order that goes beyond the injuries of a particular plaintiff to enjoin government action against nonparties exceeds the norms of judicial power."  *L.W.*, 83 F.4th at 490.  FOG and Intervenors point to dicta from overbreadth cases, FOG Br. 52; Intervenors Br. 36, but those cases merely used loose language suggesting that a facial overbreadth holding wipes a statute from the books, *see Arizona v. Biden*, 31 F.4th 469, 483-84 (6th Cir. 2022) (Sutton, C.J., concurring).  In the only Supreme Court decision that squarely analyzes the remedies for overbreadth challenges, the Court held that "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes . . . except with respect to the particular federal plaintiffs[;] the State is free to prosecute others."  *Doran v. Salem Inn*, 422 U.S. 922, 931 (1975).

*Finally*, the Court should limit any injunction to the allegedly unconstitutional component of the Act.  Opening Br. 53-55; America First Br. 6-10.  On this point, FOG and Intervenors focus solely on whether the Court can sever the "entertainers" clause.  FOG Br. 52-53; Intervenors Br. 36-38.  The Court can sever this provision

*without expanding criminal liability* because the "entertainers" clause does no work that the "harmful to minors" clause does not already do. Opening Br. 42-43; *supra* 23. But even if this Court disagrees, that still leaves limiting arguments that FOG and Intervenors do not address—like the severance of "male or female impersonators" or the injunction of only certain applications of the Act. Opening Br. 54-55.

## CONCLUSION

The Court should reverse the judgment of the district court.

Dated: November 22, 2023     Respectfully submitted,

Jonathan Skrmetti
  *Attorney General & Reporter*

Andrée Sophia Blumstein
  *Solicitor General*

James R. Newsom III
  *Special Counsel*

/s/J. Matthew Rice
J. Matthew Rice
  *Associate Solicitor General &*
  *Special Assistant to the Solicitor General*

Robert W. Wilson
  *Senior Assistant Attorney General*

Alicia Gilbert
  *Honors Fellow, Office of the Solicitor General*

Office of Tennessee Attorney General
P. O. Box 20207
Nashville, Tennessee 37202
(615) 532-6026
matt.rice@ag.tn.gov

*Counsel for Defendant-Appellant*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the Court's type-volume limitations of Fed. R. App. P. 32(a)(7)(b) because it contains 6,499 words, excluding portions exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in proportionally spaced typeface using Times New Roman 14-point font in Microsoft Word.

/s/J. Matthew Rice
J. MATTHEW RICE
*Associate Solicitor General &*
*Special Assistant to the Solicitor General*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 6 Cir. R. 25(f), I certify that a true and exact copy of this brief has been filed via the Court's electronic filing system on November 22, 2023. That system sends a Notice of Docket Activity to all registered attorneys in this case. Under 6 Cir. R. 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

/s/J. Matthew Rice
J. MATTHEW RICE
*Associate Solicitor General &*
*Special Assistant to the Solicitor General*

**ADDENDUM**

For the Court's convenience, this addendum includes:

- 1990 Tenn. Pub. Acts 939, ch. 1092, § 5.

**1990 Tenn. Pub. Acts 938, ch. 1092, § 5**

PUBLIC ACTS and RESOLUTIONS

of the

STATE OF TENNESSEE

Passed by the

NINETY-SIXTH

GENERAL ASSEMBLY

Second Regular Session

1990

Published by Authority of
Tennessee Code Annotated, Title 12, Chapter 5
under the Direction of
BRYANT MILLSAPS
Secretary of State

## CHAPTER NO. 1092

### HOUSE BILL NO. 2219

By Naifeh, Hassell, Bell, Moody, Davis (Gibson), Love, Moore (Lawrence), Williams, Cain, Ridgeway, DeBerry, Byrd, Burnett, Kernell, Rhinehart, Henry (Roane), Buck, Wix, Purcell, Herron, Holt, Givens, Turner (Hamilton), Pinion, Stallings, Collier, Severance, Kent, Burchfield, Peroulas, Hobbs, Jackson, Mr. Speaker Murray

Substituted for: Senate Bill No. 2347

By Owen, Person, Darnell, Henry, Haynes

AN ACT to amend Tennessee Code Annotated, Title 39 and Title 29 relative to obscenity and pornography and abatement of nuisances resulting from obscenity and pornography.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Section 39-17-901(2), is hereby amended by deleting the words "the state of Tennessee" and substituting instead the words "the judicial district, as defined by Section 16-2-506, in which a violation is alleged to have occurred".

SECTION 2. Tennessee Code Annotated, Section 39-17-901(6)(B), is amended by inserting at the beginning of that subdivision the words "The average person applying contemporary community standards would find that".

SECTION 3. Tennessee Code Annotated, Section 39-17-901 is amended by adding the following appropriately numbered subsections:

( ) "Excess violence" means the depiction of acts of violence in such a graphic and/or bloody manner as to exceed common limits of custom and candor, or in such a manner that it is apparent that the predominant appeal of the material is portrayal of violence for violence's sake.

( ) "Harmful to minors" means that quality of any description or representation, in whatever form, of nudity, sexual excitement, sexual conduct, excess violence, or sadomasochistic abuse when the matter or performance:

(A) Would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors;

(B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and

(C) Taken as whole lacks serious literary, artistic, political or scientific values for minors.

( ) "Minor" means any person who has not reached the age of eighteen (18) and is not emancipated.

( ) "Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than full opaque covering or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state.

( ) "Sadomasochistic abuse" means flagellation or torture by or upon a person or physical restraint by or upon a person for the purpose of sexual gratification of either person.

( ) "Sexual excitement" means the condition of human male or female genitals when in a state of sexual stimulation or arousal.

SECTION 4. Tennessee Code Annotated, Section 39-17-902, is amended by adding the word and punctuation "produce," after the words "is unlawful to knowingly" but before the words "send or cause to be sent" in subsection (a);

AND IS FURTHER AMENDED by adding the following sentence at the end of subsection (b):

"However, this section shall not apply to those acts which are prohibited by Sections 39-17-1003 - 1005."

SECTION 5. Tennessee Code Annotated, 39-17-914, is amended by deleting it in its entirety and substituting instead the following:

39-17-914. Display for Sale or Rental of Material Harmful to Minors.

(a) It is unlawful for a person to display for sale or rental a visual depiction, including a video cassette tape or film, or a written representation, including a book, magazine, or pamphlet, which contains material harmful to minors anywhere minors are lawfully admitted.

(b) The state shall have the burden of proving that the material is displayed. Material is not considered displayed under this section if:

(1) The material is:

(A) Placed in "binder racks" that cover the lower two-thirds (2/3) of the material and the viewable one-third (1/3) is not harmful to minors; and

(B) Located at a height of not less than five and one-half (5 1/2) feet from the floor; and

(C) Reasonable steps are taken to prevent minors from perusing the material; or

(2) The material is sealed and if it contains material on its cover which is harmful to minors it must also be opaquely wrapped; or

(3) The material is placed out of sight underneath the counter; or

(4) The material is located so that the material is not open to view by minors and is located in an area restricted to adults.

(5) Unless its cover contains material which is harmful to minors, a video cassette tape or film is not considered displayed if it is in a form that cannot be viewed without electrical or mechanical equipment and such equipment is not being used to produce a visual depiction.

(6) In a situation if the minor is accompanied by their parent or guardian, unless the area is restricted to adults as provided for in 39-17-914 (b) (4).

(c) A violation of this section shall be a Class C misdemeanor for each day the person is in violation of this section.

SECTION 6. Tennessee Code Annotated, Title 39, Chapter 17, Part 9, is amended by deleting Sections 39-17-910, 39-17-912, 39-17-913, 39-17-915, 39-17-916 and 39-17-917 in their entirety and renumbering the remaining sections accordingly.

SECTION 7. Tennessee Code Annotated, Title 39, Chapter 17, Part 10, is amended by adding the following new sections:

Section 39-17-1001. Title. Sections 39-17-1001 through 39-17-1007 shall be known and may be cited as the "Tennessee Protection of Children Against Sexual Exploitation Act of 1990".

Section 39-17-1002. Definitions. The following definitions apply in Sections 39-17-1002 — 1007 unless the context requires otherwise:

(1) "Community" means the judicial district, as defined by Section 16-2-506, in which a violation is alleged to have occurred.

(2) "Material" means:

(A) Any picture, drawing, photograph, motion picture film, video cassette tape, or other pictorial representation; or

(B) Any statue, figure, theatrical production or electrical reproduction.

(3) "Minor" means any person who has not reached the age of eighteen (18) and is not emancipated.

(4) "Patently offensive" means that which goes substantially beyond customary limits of candor in describing or representing such matters.

(5) "Promote" means to finance, produce, direct, manufacture, issue, publish, exhibit or advertise.

(6) "Prurient interest" means a shameful or morbid interest in sex.

(7) "Sexual activity" means any of the following acts:

(A) Vaginal, anal or oral intercourse, whether done with another person or an animal;

(B) Masturbation, whether done alone or with another human or an animal;

(C) Patently offensive, as determined by contemporary community standards, physical contact with or touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breasts in an act of apparent sexual stimulation or sexual abuse;

(D) Sado-masochistic abuse including flagellation, torture, physical restraint, domination or subordination by or upon a person for the purpose of sexual gratification of any person;

(E) The insertion of any part of a person's body or of any object into another person's anus or vagina, except when done as part of a recognized medical procedure by a licensed professional;

(F) Patently offensive, as determined by contemporary community standards, conduct, representations, depictions or descriptions of excretory functions; or

(G) Lascivious exhibition of the genitals or pubic area of any person.

Section 39-17-1003. Sexual Exploitation of a Minor.

(a) It is unlawful for any person to knowingly possess material that includes a minor engaged in:

(1) sexual activity; or

(2) simulated sexual activity that is patently offensive.

(b) In a prosecution under this section, the trier of fact may infer that a participant is a minor if the material, text, visual representation or otherwise represents or depicts the participant as a minor.

(c) Violation of this section is a Class E felony.

Section 39-17-1004. Aggravated Sexual Exploitation of a Minor.

(a)(1) It is unlawful for a person to knowingly promote, sell, distribute, transport, purchase or exchange material, or possess with the intent to promote, sell, distribute, transport, purchase or exchange material, which includes a minor engaged in:

(1) sexual activity; or

(2) simulated sexual activity that is patently offensive.

(a)(2) In a prosecution under this section, the trier of fact may infer that a participant is a minor if the material through its title, text, visual representation or otherwise represents or depicts the participant as a minor.

(a)(3) A violation of this section is a Class C felony.

(b)(1) It is unlawful for a person to knowingly promote, sell, distribute, transport, purchase or exchange material which is obscene, as defined in Section 39-17-901(6), or possess with the intent to promote, sell, distribute, transport, purchase or exchange such material, which includes a minor engaged in:

(A) sexual activity; or

(B) simulated sexual activity that is patently offensive.

(2) In a prosecution under this section, the trier of fact may infer that a participant is a minor if the material through its title, text, visual representation or otherwise represents or depicts the participant as a minor.

(3) Violation of this section is a Class B felony.

Section 39-17-1005. Especially Aggravated Sexual Exploitation of a Minor.

(a) It is unlawful for a person to knowingly promote, employ, use, assist, transport or permit a minor to participate in the performance or in the production of material which includes the minor engaging in:

(1) sexual activity; or

(2) simulated sexual activity that is patently offensive.

(b) In a prosecution under this section, the trier of fact may infer that a participant is a minor if the material through its title, text, visual representation or otherwise represents or depicts the participant as a minor.

(c) Violation of this section is a Class B felony. Provided, however, that nothing in this section shall be construed as limiting prosecution

under Section 39-13-502, aggravated rape or 39-13-504, aggravated sexual battery.

### Section 39-17-1006. Injunctions.

If the district attorney general is of the opinion that Sections 39-17-1001—1005 are being violated, the district attorney may file a petition in a circuit, chancery, or criminal court of that district relating the opinion, and request the court to issue a temporary restraining order or a temporary injunction enjoining the person named in the petition from removing the material in question from the jurisdiction of the court pending an adversary hearing on the petition. If a temporary restraining order or, after notice, a temporary injunction is so issued, the person enjoined shall answer within the time set by the court, which time shall be set by the court at not more than sixty (60) days. The adversary hearing on the petition shall be held within two (2) days after the joinder of issues. At the conclusion of the hearing, or within two (2) days thereafter, the court will determine whether or not the material in question is in violation of Sections 39-17-1001—1005. On a finding of a violation, the court shall grant a temporary injunction or continue its injunction in full force and effect for a period not to exceed forty-five (45) days or until an indictment on the matter has been submitted to the grand jury. If forty-five (45) days elapse and the grand jury has taken no action, the injunction terminates. The injunction also terminates on the grand jury returning a no true bill. On the return of a true bill of indictment, the court shall order the material in question delivered into the hands of the court clerk or district attorney general, there to be held as evidence in the case.

### Section 39-17-1007. Issuance of Process.

No process except as otherwise provided shall be issued for the violation of Sections 39-17-1003—1005 unless it is issued upon the application of the district attorney general of the district.

SECTION 8. Tennessee Code Annotated, Section 29-3-101, is amended by adding the words "with intent to exhibit, sell, deliver, or distribute matter or materials in violation of Sections 39-17-901—39-17-912 or 39-17-1003—39-17-1005" after the word "pornographic" but before the words and punctuation ", quarreling" in subsection (a)(1);

AND IS FURTHER AMENDED by changing the period (.) at the end of the first sentence of subsection (c) to a semi-colon (;) and by adding the following additional language:

provided, however, seizure for the possession of obscene matter shall be in accordance with Tennessee Code Annotated, Sections 39-17-901—39-17-908 and seizure for violations of Tennessee Code Annotated, Sections 39-17-1003—39-17-1005 shall be in accordance with Sections 39-17-1006 and 39-17-1007.

SECTION 9. Tennessee Code Annotated, Section 39-15-413, is amended by deleting "39-17-910 through 917" and substituting in its place "39-17-901 through 912, 39-17-1003 through 1005".

SECTION 10. Tennessee Code Annotated Title 39, Chapter 17, is amended by adding the following new subsections at the end of Part 9:

### Section 39-17-913. Injunctions. 

If the district attorney general is of the opinion that Sections 39-17-910—911 are being violated, the district attorney may file a petition in a circuit, chancery, or criminal court of that district relating the opinion, and request the court to issue a temporary restraining order or a temporary injunction enjoining the person named in the petition from removing the material in question from the jurisdiction of the court pending an adversary hearing on the petition. If a temporary restraining order or, after notice, a temporary injunction is so issued, the person enjoined shall answer

within the time set by the court, which time shall be set by the court at not more than sixty (60) days. The adversary hearing on the petition shall be held within two (2) days after the joinder of issues. At the conclusion of the hearing, or within two (2) days thereafter, the court will determine whether or not the material in question is in violation of Sections 39-17-901—911. On a finding of a violation, the court shall grant a temporary injunction or continue its injunction in full force and effect for a period not to exceed forty-five (45) days or until an indictment on the matter has been submitted to the grand jury. If forty-five (45) days elapse and the grand jury has taken no action, the injunction terminates. The injunction also terminates on the grand jury returning a no true bill. On the return of a true bill of indictment, the court shall order the material in question delivered into the hands of the court clerk or district attorney general, there to be held as evidence in the case.

Section 39-17-914. Issuance of Process. No process except as otherwise provided shall be issued for the violation of Sections 39-17-910—911 unless it is issued upon the application of the district attorney general of the district.

SECTION 11. If any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to that end the provisions of this act are declared to be severable.

SECTION 12. This act shall take effect upon becoming a law, the public welfare requiring it.

**PASSED:** _____ APRIL 12, 1990 _____

_signature_

ED MURRAY, SPEAKER
HOUSE OF REPRESENTATIVES

_signature_

JOHN S. WILDER
SPEAKER OF THE SENATE

**APPROVED** this 4th day of May 1990

_signature_

NED McWHERTER, GOVERNOR