# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FRIENDS OF GEORGE'S, INC.,
*Plaintiff-Appellee,*

v.

STEVEN J. MULROY,
*Defendant-Appellant.*

On Appeal from the Judgment of the United States
District Court for the Western District of Tennessee
(No. 2:23-cv-02163-TLP-tmp)

## RESPONSE TO PETITION FOR REHEARING EN BANC

Jonathan Skrmetti
*Attorney General*

J. Matthew Rice
*Solicitor General*
*Counsel of Record*

Gabriel Krimm
*Assistant Solicitor General*

Robert W. Wilson
*Senior Assistant Attorney General*

Office of Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee
(615) 532-6026
matt.rice@ag.tn.gov

*Counsel for Defendant-Appellant*

**TABLE OF CONTENTS**

Introduction ...................................................................................................1

Background ...................................................................................................2

Reasons for Denying the Petition ...............................................................4

I.    FOG Identifies No En Banc-Worthy Issue. .......................................4

II.   The Panel's Decision Was Correct. ...................................................6

      A.    The panel properly interpreted Tennessee law...........................6

      B.    The panel properly applied well-established standing precedents...........11

Conclusion ..................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. State*,
2006 WL 618297 (Tenn. Crim. App. Mar. 13, 2006) ...........................................9

*Armstrong v. Asselin*,
734 F.3d 984 (9th Cir. 2013) ...............................................13

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002)...........................................................13

*Clark v. Martinez*,
543 U.S. 371 (2005).............................................................7

*Crawford v. U.S. Dep't of Treasury*,
868 F.3d 438 (6th Cir. 2017) ...............................................5

*Davis v. Colerain Township*,
51 F.4th 164 (6th Cir. 2022) ...............................................12

*Davis-Kidd Booksellers, Inc. v. McWherter*,
866 S.W.2d 520 (Tenn. 1993) ............................................ 7, 8, 10, 11

*Elonis v. United States*,
575 U.S. 723 (2015)........................................................ 10, 11

*Friends of George's, Inc. v. Mulroy*,
108 F.4th 431 (6th Cir. 2024) .................................... *passim*

*Mitts v. Bagley*,
626 F.3d 366 (6th Cir. 2010) ...............................................5

*Orren v. Carlton*,
1998 WL 57551 (Tenn. Crim. App. Feb. 13, 1998)...........................................11

*Staples v. United States*,
511 U.S. 600 (1994)...........................................................10

*State v. Page*,
81 S.W.3d 781 (Tenn. Crim. App. 2002) ...........................................10

*State v. Stewart*,
   2013 WL 3820992 (Tenn. Crim. App. July 22, 2013) ...........................................9

*United States v. Hansen*,
   599 U.S. 762 (2023) ........................................................................................2, 10

**Statutes**

Tenn. Code Ann. § 7-51-1407(c)(1) ...........................................................................6

Tenn. Code Ann. § 39-17-901 ................................................... 2, 6, 7, 8

Tenn. Code Ann. § 39-17-911(b).........................................................................3, 9

Tenn. Code Ann. § 39-17-914 .........................................................................7, 8

**Rule**

Fed. R. App. P. 35(a) ...............................................................................................4

**INTRODUCTION**

The Court should deny the petition for rehearing en banc.  The panel decision applies well-established standing principles.  It commits no "precedent-setting error," much less an error "of exceptional public importance."  6 Cir. I.O.P. 35(a).  And it does not conflict with any "Supreme Court or Sixth Circuit precedent."  *Id.*  Plaintiff Friends of George's (FOG) lead criticism of the decision is that it unduly "narrowed" a Tennessee law by misreading decisions of the "Tennessee Supreme Court."  Pet. at i.  But "[a]lleged errors in the determination of state law" is what this Court says *does not* suffice for en banc review.  6 Cir. I.O.P. 35(a).  FOG otherwise contends that the panel somehow "heightened the standard" for pre-enforcement standing when it "applied" the correct standing test to District Attorney Mulroy's statements and "FOG's videos."  Pet. at 2, 16-17.  But alleging "errors in the application of correct precedent to the facts of the case" is not en banc worthy either.  6 Cir. I.O.P. 35(a).  The full Court need not devote its attention to these factbound, state-law-driven arguments.  That is truer still because the panel majority got this case right.  The Court should deny the petition.

**BACKGROUND**

The Tennessee legislature passed the Adult Entertainment Act to shield children from sexually explicit performances.  By its terms, the Act covers a narrow sweep.  It applies only to performances that include "nudity, sexual excitement,

1

sexual conduct, excess violence or sadomasochistic abuse"; that "appeal predominantly to prurient, shameful or morbid interests of minors"; and that do so in a "patently offensive" way, devoid of "serious literary, artistic, political or scientific value[] for minors." Tenn. Code Ann. § 39-17-901(6) (defining "harmful to minors"). And the Act does not even ban these performances. It simply requires them to occur in adult-only zones on private property.

There is nothing novel about limiting "adult-oriented performances" to "age-restricted venues." Legis. Tr., R.35-1 at 515.[1] And in the challenged statute, Tennessee's legislators did so by borrowing language, "word-for-word," from two existing Tennessee statutes that have "been on the books for . . . decades." *Id.* at 538, 588; *see* 1987 Tenn. Pub. Acts 841, ch. 432, § 2; 1990 Tenn. Pub. Acts 938, ch. 1092, §§ 1-3.[2] But FOG ignored that history and rushed to the courthouse to invalidate the Act with no real threat of enforcement. Responding to the "odd incentives" created by the federal courts' First Amendment jurisprudence, *United States v. Hansen*, 599 U.S. 762, 781 (2023), FOG "presse[d] the [Act] toward the most expansive reading possible" in an attempt to assert that FOG's shows would violate it. *Id.*

Before the district court, that strategy worked. The court granted a temporary

---

[1] All record pincites refer to the "Page ID" numbers in the ECF file stamps for the consolidated docket, No. 2:23-cv-02163 (W.D. Tenn.).

[2] The Addendum to the Opening Brief contains both of the cited public acts (from 1987 and 1990) for the Court's convenience.

restraining order and swiftly held a joint preliminary-injunction hearing and merits trial. After trial, the district court adopted FOG's expansive reading of the Act. It then held the law unconstitutional on both overbreadth and void-for-vagueness grounds, departing from longstanding precedent approving limitations on content harmful to minors and inviting a circuit split on the merits. Op., R.91.

A panel of this Court reversed. *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431 (6th Cir. 2024). Following well-established Sixth Circuit and Supreme Court precedent, the panel held that FOG lacked standing three times over: (1) FOG failed to prove an intention to violate the Act; (2) FOG failed to prove an intention to engage in conduct arguably affected with a constitutional interest; and (3) FOG failed to prove a certain threat of prosecution. *Id.* at 435-40. Indeed, the record developed in the district court showed that FOG's shows fall outside the Act's ambit. Moreover, and not coincidentally, FOG had never been threatened or charged under existing Tennessee obscenity laws that apply the same "harmful to minors" standard to "premises." *See* Tenn. Code Ann. § 39-17-911(b). In short, the panel correctly found that FOG lacked standing to litigate this concocted dispute. Judge Mathis dissented. *Id.* at 441-58.

# REASONS FOR DENYING THE PETITION

## I.    FOG Identifies No En Banc-Worthy Issue.

Rehearing en banc "is an extraordinary procedure," 6 Cir. I.O.P. 35(a), that "is not favored and ordinarily will not be ordered," Fed. R. App. P. 35(a).  Its point is not simply to give losing parties a do-over but to "bring to the attention of the entire court a precedent-setting error of exceptional public importance or an opinion that directly conflicts with Supreme Court or Sixth Circuit precedent."  6 Cir. I.O.P. 35(a).  The petition offers two purported legal conflicts for this Court's review.  But both boil down to requests for factbound error correction, on matters involving state law to boot.

*First*, the petition claims that the panel created a conflict with Supreme Court and Sixth Circuit precedent holding that federal courts cannot "rewrit[e] a state statute."  Pet. at 2; *see also id.* at 11.  But there is no conflict.  To decide this case, the panel had to choose between two competing views of Tennessee law.  And in favoring the view put forward by D.A. Mulroy (represented by lawyers in the State Attorney General's Office), the panel never once claimed that it had the power to rewrite Tennessee's statute.  *That* would be a conflict of precedent.  What FOG really means by "rewrite" here is that it strenuously disagrees with the panel's interpretation of the Act.  Pet. at 11-15.  That is an "[a]lleged error[] in the determination of state law," not a conflict of precedent.  6 Cir. I.O.P. 35(a).

*Second*, the petition argues that the panel "essentially conflated" the pre-enforcement standing "requirements," thereby "heighten[ing] the standard for establishing the likelihood of enforcement." Pet. at 2, 16. Again, though, this argument is nothing more than a disagreement with the application of a settled test. The panel applied the exact test from *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438 (6th Cir. 2017), that FOG recognizes governs. *Compare* Pet. at 2, 16 *with Mulroy*, 108 F.4th at 435. And the petition (at 16) fails to identify any language from the panel opinion "conflat[ing]" the requirements of the *Crawford* test. Nor could it. The panel carefully separated out the *Crawford* test into three separate sections of its opinion—Part II.A, Part II.B, and Part II.C. And the panel stepped through the law for each component by quoting and applying governing precedent. FOG identifies no misstated legal standard, just a perceived misapplication of *Crawford* to the facts FOG highlights.

At bottom, the panel's majority decision reflects a straightforward application of established precedent. That standing holding bears none of the "compelling circumstances" that *en banc* review typically requires. *Mitts v. Bagley*, 626 F.3d 366, 370 (6th Cir. 2010) (Sutton, J., concurring) (quotations omitted).

## II. The Panel's Decision Was Correct.

Regardless, the Court need not grant *en banc* review because the panel decision correctly applied the law.

### A. The panel properly interpreted Tennessee law.

The petition (at 11) claims that the panel majority "rewrit[es] a state statute." That argument turns on two "[a]lleged errors in the determination of state law." 6 Cir. I.O.P. 35(a). Neither holds up.

1. The petition (at 12) claims that the panel "impermissibly rewrote the [Act] to cover only material lacking in value to 'a reasonable 17-year-old minor.'" That's wrong. The panel "rewrote" nothing—it properly adhered to Tennessee Supreme Court precedent.

The Act regulates "adult cabaret entertainment," Tenn. Code Ann. § 7-51-1407(c)(1), which includes only "performances" deemed "harmful to minors, *as . . . defined in § 39-17-901*," *id.* § 7-51-1401(3)(A) (emphasis added). Section 39-17-901, in turn, defines "harmful to minors" to mean "any description or representation . . . of nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse" that (1) "[w]ould be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors;" (2) "[i]s patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors;" and (3) "[t]aken

as whole lacks serious literary, artistic, political or scientific values for minors." *Id.* § 39-17-901(6).

The Tennessee Supreme Court construed that exact statutory definition in *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 528 (Tenn. 1993). That case involved a constitutional challenge to a law making it "unlawful for a person to display for sale or rental a visual depiction . . . that contains material *harmful to minors* anywhere minors are lawfully admitted." Tenn. Code Ann. § 39-17-914(a) (emphasis added). Like here, the statute at issue incorporated the definition of "harmful to minors" in § 39-17-901(6). *See id.* § 39-17-901 (providing that the definition "appl[ies] in this part, unless the context requires otherwise"); *id.* § 39-17-914(a) (using the defined term "harmful to minors"). And to avoid constitutional issues, the Tennessee Supreme Court "narrowly construed" that "harmful to minors" definition to materials lacking value "for a reasonable 17-year-old." *Davis-Kidd*, 866 S.W.2d at 528.

It was *that* tenet of Tennessee law that bound the panel in this case. *See Mulroy*, 108 F.4th at 435-36. Indeed, the text of § 39-17-901 must have the same meaning here as it did in *Davis-Kidd*. *See Clark v. Martinez*, 543 U.S. 371, 378-80 (2005). To hold otherwise "would render [the] statute a chameleon" and "establish . . . the dangerous principle that judges can give the same statutory text different meanings in different cases." *Id.* at 382, 386.

Tacitly recognizing this, the petition (at 13) argues that *Davis-Kidd* construed the provision setting out the offense (§ 39-17-914(a)), not the provision defining "harmful to minors" (§ 39-17-901). But *Davis-Kidd* clearly explained that it was construing the "harmful to minors" definition. Immediately before narrowly construing the text, the *Davis-Kidd* court proclaimed that the best "approach to th[e] constitutional dilemma" was to adopt "the narrow statutory interpretation adopted by the Eleventh Circuit." 866 S.W.2d at 528. And, as it explained, "the Eleventh Circuit ruled that in determining what was 'harmful to minors' under a Georgia display statute, the third prong of the test (whether the material, taken as a whole, has serious literary, artistic, political or scientific value for a minor) must be analyzed by determining whether the material had such value for a reasonable 17-year-old minor." *Id.* at 527. There is thus no doubt about the language *Davis-Kidd* construed.

Even without *Davis-Kidd*'s explanation of the statute's construction, it makes no sense to claim that the court only "interpreted . . . Tenn. Code § 39-17-914." Pet. at 13. *Davis-Kidd* qualified the statutory language "lacks serious literary, artistic, political or scientific value" with "*for a reasonable 17-year-old*." 866 S.W.2d at 528 (emphasis added). There is no equivalent language in § 39-17-914(a) that *Davis-Kidd* could have possibly construed.

Attempting to evade that conclusion, the petition (at 13) cites two intermediate state-court cases that purportedly cast doubt on the panel's interpretation of *Davis-*

*Kidd*'s construction. But neither case construes the "harmful to minors" language. *See State v. Stewart*, No. M2011-01994-CCA-R3-CD, 2013 WL 3820992, at *17 (Tenn. Crim. App. July 22, 2013); *Allen v. State*, No. M2005-00601-CCA-R3-PC, 2006 WL 618297, at *4 (Tenn. Crim. App. Mar. 13, 2006). And that is because neither had to: Both cases involved porn being shown to children, and neither defendant questioned whether the content was "harmful to minors." *Stewart*, 2013 WL 3820992, at *4-5, *14, *18; *Allen*, 2006 WL 618297, at *2-4.

At bottom, as the panel recognized, "the Supreme Court of Tennessee has interpreted 'harmful to minors' before," and "[t]his Court is bound by the state court's interpretation of its criminal laws." *Mulroy*, 108 F.4th at 435-36 (quotations omitted). Nothing in the petition casts doubt on that.

And even FOG's preferred view of Tennessee law still wouldn't help its case for standing. If "harmful to minors" means what FOG says it means, "FOG has been breaking obscenity law for years." *Id.* at 437 (citing Tenn. Code Ann. § 39-17-911(b)). "Yet despite selling tickets without distinguishing between adults or minors, neither FOG nor its performers have ever been charged with violating Tennessee obscenity laws or even threatened with prosecution." *Id.* This necessarily undercuts any claim that FOG faces a certain threat of enforcement.

2. The petition (at 14-15) also erroneously claims that the panel "impermissibly rewrote the statute to include a scienter requirement." But while the Act

contains no express *mens rea* element, that's because "[t]here is no need for it."

*Hansen*, 599 U.S. at 780. It is well-established that courts presume that there is a

*mens rea* requirement in criminal statutes even when a statute is "silent," unless there

is "some indication of [legislative] intent" overcoming this "presumption." *Staples

v. United States*, 511 U.S. 600, 605-19 (1994); *see also Elonis v. United States*, 575

U.S. 723, 734 (2015). And as the panel recognized, the Tennessee Supreme Court

has inferred scienter requirements for all "criminal statutes regulating obscenity,"

holding that "the State must establish that the defendant had *knowledge of the con-

tents and character* of the" speech at issue. *Mulroy*, 108 F.4th at 440 (quoting *Davis-

Kidd*, 866 S.W.2d at 528 (emphasis added)). The Act thus "implicitly incorporates

the traditional state of mind required for" all obscenity offenses. *Hansen*, 599 U.S.

at 779.

The petition (at 15) claims that "*Davis-Kidd* merely pointed to the codified

scienter element in § 39-11-301 that applies to all offenses within Title 39," and that

the Act "is not found in Title 39." But *Davis-Kidd* clearly was not relying solely on

§ 39-11-301, as that statute says "recklessness suffices." *Id.*; *see State v. Page*, 81

S.W.3d 781, 786 (Tenn. Crim. App. 2002) (holding that, under § 39-13-301, reck-

lessness generally suffices if no mental state is specified). Instead, *Davis-Kidd* cited

U.S. Supreme Court precedent to "incorporate[] the traditional state of mind re-

quired" for obscenity—knowledge. *Hansen*, 599 U.S. at 779.

Finally, for all its criticism on the panel's application of *Davis-Kidd*, the petition provides no first-principles argument for departing from the general rule that courts "interpret criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis*, 575 U.S. at 734 (cleaned up). This presumption is not somehow limited to federal criminal statutes; it is rooted in the traditional common law notion that, generally, "wrongdoing must be conscious to be criminal." *Id.* (quotations omitted). That principle that applies equally to federal and state crimes, and Tennessee Courts have confirmed as much. *See, e.g.*, *Orren v. Carlton*, 1998 WL 57551, at *3 (Tenn. Crim. App. Feb. 13, 1998).

The panel was right not to upend established *protections* for criminal defendants just to help FOG manufacture a case or controversy. And, again, even if FOG were right, that would prove little. The panel's scienter discussion represents just a fraction of one non-dispositive consideration used to assess the threat of prosecution. *Mulroy*, 108 F.4th at 440-41. Others abounded, defeating standing in any event.

**B. The panel properly applied well-established standing precedents.**

FOG also "[a]llege[s] . . . errors in the application of correct precedent to the facts of the case." 6 Cir. I.O.P. 35(a). Again, the panel was right, and FOG is wrong.

1. The petition (at 16) claims that, in applying the *McKay* factors, the panel "disregarded" D.A. Mulroy's statement that he "intends to enforce all State of

Tennessee laws that fall within his prosecutorial jurisdiction, including the felony and misdemeanor crimes recently" established through the Adult Entertainment Act. But the panel did not "disregard" that statement at all; it followed this Court's instruction to give such statements little weight. As this Court made clear in *Davis v. Colerain Township*, a statement that "in the *abstract* [an official] might . . . enforc[e] the rule" does not "suggest that he would enforce the rule against anything like [a plaintiff's] *specific* speech." 51 F.4th 164, 174 (6th Cir. 2022). The panel applied this binding decision to the facts at hand. *Mulroy*, 108 F.4th at 440.

Nevertheless, FOG strawmans the panel's analysis (at 17) by suggesting that the panel required "a plaintiff . . . to present an itemized list of each entity against whom a prosecutor specifically intends to enforce a law." The panel did no such thing. The panel wrote only two sentences on this issue—both of which simply quote binding Sixth Circuit law. *Mulroy*, 108 F.4th at 440.

2. Nor did the panel err in recognizing that "FOG only presented individual skits and scenes abstracted from the context of an entire show." *Mulroy*, 108 F.4th at 437. In arguing otherwise, the petition repeatedly mischaracterizes the record it developed below.

Only two exhibits with video clips were submitted at trial. First, D.A. Mulroy submitted trial exhibit 1, which contained all of FOG's "Wunderland Holiday" show, to demonstrate the artistic value, and benign nature, of FOG's shows. Tr.,

R.81, at 1046-49 (noting that "every one of the videos" on trial exhibit 1 "had to do with this Wunderland holiday program"). Second, FOG introduced a series of short video clips taken from different scenes in different FOG shows that purportedly risked violating the Act. Tr., R.81, at 1046-50, 1079-83; Trial Ex. 2. FOG submitted the clips to the court on a thumb drive designated trial exhibit 2, which contained (1) the clips shown at trial and (2) videos of the full *scenes* from which the clips derived. Tr., R.81, at 1049-50; Trial Ex. 2.

In post-trial briefing, D.A. Mulroy pointed out that "[t]he artistic merit of a work does not depend on the presence of a single explicit scene." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 248 (2002); *see also Armstrong v. Asselin*, 734 F.3d 984, 990 (9th Cir. 2013) (noting that, absent evidence of "the work as a whole"— meaning an *entire* show—"the [applicable] standard c[ould] not be applied"). And he then argued that "[f]or the scenes of [FOG's] shows displayed at trial, [FOG] failed to introduce the entirety of the work into the record, so the Court cannot evaluate the work's artistic merit as a whole." R.85 at 1332. The district court responded that it "watched the *full videos* for the first and second performances" FOG proffered at trial. Op., R.91 at 1418 n.12 (emphasis added). But the "full videos" in the record do not equal "full shows." In trial exhibit 2, FOG only introduced into evidence video clips *from scenes* of a show and "full videos" of those *entire scenes*—not videos of entire *shows*. Trial Ex. 2. The panel thus properly recognized that "FOG only

presented individual skits and scenes abstracted from the context of an entire show." *Mulroy*, 108 F.4th at 437.

In reaching a different conclusion, the dissent pointed to D.A. Mulroy's "acknowledge[ment] that there was one complete show in the record." *Id.* at 450 (Mathis, J., dissenting) (quotations omitted). But again, that "complete show" was the Wunderland Holiday show—the one *D.A. Mulroy* introduced to show FOG was *not* performing content harmful to minors. Tr., R.81, at 1046-49. None of the scenes that the district court identified to justify standing came from that show. Op., R.91, at 1418-19. In fact, the parties never even submitted trial exhibit 1 (the Wunderland Holiday show) to this Court because all agreed its benign contents would not violate the Act, making its content legally irrelevant.

Still, FOG quizzically doubles down. The petition claims that FOG introduced into evidence a full recording of a different show, *Dragnificient*, and that D.A. Mulroy "conceded" as much. Pet. at 18 (citing R.85, at 1332). Not true. The purported "concession" is actually D.A. Mulroy's post-trial brief noting that "[t]here is only one complete show in the record"—the Wunderland Holiday show D.A. Mulroy introduced in trial exhibit 1. R.85, at 1332. The petition then baselessly claims "that *Dragnificient* was submitted as a series of ten component video clips—that is, the complete set of clips constituting the entire show." Pet. at 18 (citing R.69, 958-967). But FOG cites only to the parties' "pretrial order"—specifically plaintiff's list

of "*proposed* exhibits." R.69, 958-967 (emphasis added). To state the obvious, listing something as a proposed exhibit is not the same thing as successfully introducing it into evidence at trial. FOG did not do the latter.

And the Court need not take D.A. Mulroy's word for it. The parties jointly submitted to this Court, on thumb drives, trial exhibit 2, stating "[t]he parties agree that these thumb drives include the same substantive videos that were before the district court." ECF No. 25 (joint letter to Clerk Hunt). Those thumb drives do not contain a full show. The panel understood the contents of the record. Reviewing the trial exhibit submitted will confirm as much.

## CONCLUSION

The Court should deny the petition for rehearing en banc.

Dated: September 3, 2024      Respectfully submitted,

Jonathan Skrmetti
   *Attorney General & Reporter*

<u>/s/J. Matthew Rice</u>
J. Matthew Rice
   *Solicitor General*

Gabriel Krimm
   *Assistant Solicitor General*

Robert W. Wilson
   *Senior Assistant Attorney General*

Office of Tennessee Attorney General
P. O. Box 20207
Nashville, Tennessee 37202
(615) 532-6026
matt.rice@ag.tn.gov

*Counsel for Defendant-Appellant*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the Court's type-volume limitations of Fed. R. App. P. 35(e) because it contains 3450 words, excluding portions exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in proportionally spaced type-face using Times New Roman 14-point font in Microsoft Word.

/s/J. Matthew Rice
J. MATTHEW RICE
*Solicitor General of Tennessee*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 6 Cir. R. 25(f), I certify that a true and exact copy of this brief has been filed via the Court's electronic filing system on September 3, 2024. That system sends a Notice of Docket Activity to all registered attorneys in this case. Under 6 Cir. R. 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

/s/J. Matthew Rice
J. MATTHEW RICE
*Solicitor General of Tennessee*
